[No. 40236-0-II.   Division Two.   August 9, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. DEREK LEE PARRIS, *Appellant*.

*Michelle B. Adams* (of *Law Office of Michelle Adams PLLC*), for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Jeremy A. Morris, Deputy*, for respondent.

¶1 HUNT, J. — Derek Lee Parris appeals his bench trial conviction for possession of depictions of a minor engaged in sexually explicit conduct, a crime committed against a family or household member. He argues that (1) the trial court erred in failing to suppress evidence discovered during an allegedly illegal search of memory cards[1] found in his room, which were searched without a warrant issued following his community custody violations; and (2) the trial court made several erroneous findings of fact that the record does not support. We affirm.

## FACTS

### I. PROBATION VIOLATION

¶2 Derek Lee Parris received a community custody sentence for felony failure to register as a sex offender. Provisions of his community custody, to which he agreed in writing, prohibited him from having contact with minors, possessing sexually explicit materials (such as pornography), and possessing or using alcohol or illegal drugs and drug paraphernalia. His community custody also required him to participate in drug and alcohol treatment, to be employed, and to comply with a 10 PM to 5 AM curfew.

¶3 By June 2009, Parris had violated several of his probationary requirements: A urinalysis test revealed methamphetamine; he had failed to participate in a drug

---

[1] A "memory card" or "flash card" is an electronic flash memory data storage device used for storing digital information. They are commonly used in many electronic devices, including digital cameras, mobile phones, laptop computers, MP3 (audio file format) players, and video game consoles. They are small, re-recordable, and able to retain data without power. *See* the Secure Digital Association web site: www.sdcard.org (last visited Aug. 8, 2011). The parties also use the term "memory sticks."

and alcohol treatment program; and he had failed to provide proof of work or legitimate income. On July 6, Parris's Community Corrections Officer (CCO), Nancy Nelson, received an electronic report that Bremerton police had arrested Parris for driving with a suspended license at 10:40 PM and that an underage young woman had been with him at the time. That same day, Nelson received a phone call from Parris's mother, who was concerned about Parris's drug use and described his behavior as "out of control." Verbatim Report of Proceedings (VRP) (Nov. 16, 2009) at 9. Parris's mother told Nelson that Parris had threatened to get a gun if Department of Corrections (DOC) staff tried to arrest him. Based on these incidents, Nelson believed that Parris was at risk to harm himself or someone else. After conferring with her supervisor, she decided to arrest Parris and to search his residence.

¶4 Nelson went to Parris's residence, accompanied by two other CCOs and two deputies from the Kitsap County Sheriff's Office. Parris lived in a small room off the side of his mother's garage. Nelson first met with Parris's brother, Jeremy Parris, who verbalized his concern that Parris was at risk to overdose. After knocking on Parris's door for 10-15 minutes with no response, Nelson walked around to the side of the building, which had two windows.

¶5 As they looked in the windows, officers saw Parris and a young female hiding in the room and ordered them to exit. Officers took the young female to another part of the property and questioned her, identifying her as 17-year-old DLS.[2] Officers arrested Parris on a DOC warrant for probation violations, handcuffed him, and put him in the back of the DOC car.

¶6 Nelson and her fellow officers searched Parris's room. Nelson noticed a large quantity of women's clothing, which appeared to belong to DLS. Nelson identified several items

---

[2] It is appropriate to provide some confidentiality in this case. Accordingly, it is hereby ordered that initials will be used in the body of the opinion to identify juveniles involved.

that Parris's community custody conditions prohibited him from having, including: four syringes, a "largely empty bottle of vodka," and pornography in various formats such as magazines, DVDs (digital video disk), and videos. Clerk's Papers at 7. In a small zippered case, Nelson found two portable USB[3] electronic storage drives, used to download, to transfer, or to modify camera images to a computer; and three memory cards, used to record digital images and videos. One of the memory cards had DLS's first name written on it. Nelson did not know what information might be on the USB drives and memory cards but, thinking they might show Parris's violation of probation, she seized them.

¶7 Nelson viewed the USB drives' contents the following day. They contained no information. She then checked the three memory cards' contents. The record does not indicate that either the USB drives or the memory cards prompted Nelson to enter a password or required Nelson to circumvent some other data privacy protection. The data on two of the memory cards included photos of two guns in a case, a 17-minute video of DLS performing oral sex on Parris, and Parris sodomizing DLS. Nelson submitted a comprehensive report along with the two memory cards to the Kitsap County Sheriff's Office.

## II. Procedure

¶8 The State charged Parris with one count of possession of depictions of a minor engaged in sexually explicit conduct and further charged a special allegation that Parris committed the crime against a family or household member. Parris filed a motion to suppress the evidence seized during the search of his residence. The trial court denied this motion.

---

[3] "USB" is an acronym for Universal Serial Bus and indicates the standardized connections between computer peripherals (keyboard, printer, camera etc.) and a personal computer. The portable storage drives (also known as "flash drives") are typically removable, rewritable, and often used for the same purposes as floppy disks or CD-ROMs (compact disc read-only memory) but are smaller, faster, and with greater memory capacity.

¶9 Parris proceeded to a bench trial on stipulated facts. The trial court found him guilty of possession of depictions of a minor engaged in sexually explicit conduct and also found that Parris had committed the crime against a family or household member. Parris appeals.

## ANALYSIS

### SEARCH OF ELECTRONIC STORAGE MEDIA

¶10 Parris first argues that the trial court erred in denying his motion to suppress evidence discovered during Nelson's search of the memory cards found in his room, the search of which was authorized based on his alleged community custody violations; he contends that Nelson needed a warrant to search the memory cards. This argument fails.

### A. Standard of Review; Burden of Proof

¶11 We review the validity of a warrantless search de novo. *State v. Kypreos*, 110 Wn. App. 612, 616, 39 P.3d 371 (2002). We review conclusions of law relating to the suppression of evidence de novo and findings of fact for substantial evidence. *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Generally, we view trial court findings as verities, provided there is substantial evidence to support them. *Hill*, 123 Wn.2d at 647.

### B. Community Corrections Officer's Search of Parris's Room and Possessions

#### 1. Probationers, parolees, and sex offenders' diminished expectation of privacy

¶12 Parris argues that the trial court erred when it failed to suppress evidence discovered in Nelson's illegal

search of electronic storage media (memory cards) found in Parris's room. The State responds that because Nelson had reasonable cause to believe that Parris violated community custody conditions, the law permits Nelson's search of Parris's residence and property. We agree with the State.

¶13 Unless an exception is present, a warrantless search is impermissible under both article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution. WASH. CONST. art. I, § 7; U.S. CONST. amend IV.[4] *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). Generally, the trial court suppresses evidence seized from an illegal search under the exclusionary rule or the fruit of the poisonous tree doctrine. *Gaines*, 154 Wn.2d at 716-17.

¶14 Although in some circumstances article I, section 7 provides broader protections than its federal counterpart, Washington law recognizes that probationers and parolees have a diminished right of privacy, which permits a warrantless search, based on probable cause. *State v. Lucas*, 56 Wn. App. 236, 239-40, 783 P.2d 121 (1989), *review denied*, 114 Wn.2d 1009 (1990). Parolees and probationers have diminished privacy rights because they are persons whom a court has sentenced to confinement but who are simply serving their time outside the prison walls; therefore, the State may supervise and scrutinize a probationer or parolee closely. *Lucas*, 56 Wn. App. at 240. Nevertheless, this diminished expectation of privacy is constitutionally permissible only to the extent " 'necessitated by the legitimate demands of the operation of the parole process.' "

---

[4] Article I, section 7 of the Washington Constitution provides:

No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*State v. Simms*, 10 Wn. App. 75, 86, 516 P.2d 1088 (1973) (quoting *In re Martinez*, 1 Cal. 3d 641, 646, 463 P.2d 734, 83 Cal. Rptr. 382, *cert. denied*, 400 U.S. 851 (1970)), *review denied*, 83 Wn.2d 1007 (1974).

¶15 Convicted sex offenders in Washington also have a reduced expectation of privacy because of the " 'public's interest in public safety' " and in the effective operation of government. *In re Det. of Campbell*, 139 Wn.2d 341, 355-56, 986 P.2d 771 (1999) (internal quotation marks omitted) (quoting *State v. Ward*, 123 Wn.2d 488, 502, 869 P.2d 1062 (1994)), *cert. denied*, 531 U.S. 1125 (2001).[5] Parris falls under both the sex offender and probationer exceptions to the otherwise constitutionally guaranteed privacy rights to be free from unreasonable searches and seizures.

### 2. Articulable Suspicion Search

¶16 RCW 9.94A.631(1) authorizes a warrant exception for a CCO to search a probationer's residence and "other personal property" when the CCO has reasonable cause to believe probationer has violated release conditions.[6] *State v. Massey*, 81 Wn. App. 198, 199, 913 P.2d 424

---

[5] *See also State v. Williams*, 135 Wn. App. 915, 924, 146 P.3d 481 (2006) (computer search not unreasonable because public safety interest lowers sex offenders' privacy expectation), *review denied*, 162 Wn.2d 1001 (2007).

[6] RCW 9.94A.631 provides:

(1) If an offender violates any condition or requirement of a sentence, a community corrections officer may arrest or cause the arrest of the offender without a warrant, pending a determination by the court or a department of corrections hearing officer. If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.

(2) For the safety and security of department staff, an offender may be required to submit to pat searches, or other limited security searches, by community corrections officers, correctional officers, and other agency approved staff, without reasonable cause, when in or on department premises, grounds, or facilities, or while preparing to enter department premises, grounds, facilities, or vehicles. Pat searches of offenders shall be conducted only by staff who are the same gender as the offender, except in emergency situations.

(3) A community corrections officer may also arrest an offender for any

(1996). A warrantless search of parolee or probationer is reasonable if an officer has well-founded suspicion that a violation has occurred. *Massey*, 81 Wn. App. at 200. Analogous to the requirements of a *Terry* stop,[7] reasonable suspicion requires specific and articulable facts and rational inferences. *Simms*, 10 Wn. App. at 87. "Articulable suspicion" is defined as a substantial possibility that criminal conduct has occurred or is about to occur. *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

¶17 Parris does not challenge Nelson's well-founded suspicion to support the search of his room generally. Instead, he argues that Nelson lacked articulable facts to support suspicion that the memory cards contained evidence of community custody violations because the memory cards' content was not readily apparent based on visual inspection and no one had provided Nelson with information about their content.

¶18 Parris does not, however, address the plain language of RCW 9.94A.631(1), which expressly provides for a search of probationer's "person, residence, automobile, or *other personal property*" without a warrant. (Emphasis added.) In our view, the memory cards and their contents constitute such "other personal property," for which the statute authorized Nelson's search, with or without a warrant.

---

crime committed in his or her presence. The facts and circumstances of the conduct of the offender shall be reported by the community corrections officer, with recommendations, to the court or department of corrections hearing officer.

If a community corrections officer arrests or causes the arrest of an offender under this section, the offender shall be confined and detained in the county jail of the county in which the offender was taken into custody, and the sheriff of that county shall receive and keep in the county jail, where room is available, all prisoners delivered to the jail by the community corrections officer, and such offenders shall not be released from custody on bail or personal recognizance, except upon approval of the court or authorized department staff, pursuant to a written order.

[7] *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

¶19 Nor does Parris explain why Nelson's search of the memory cards exceeded the parameters necessitated by the legitimate demands of the operation of the community custody process. *See Simms*, 10 Wn. App. at 86. Parris's community custody conditions included prohibitions on contact with minors, possession of sexually explicit materials, and possession or use of alcohol, illegal drugs, or drug paraphernalia. Nelson's search of Parris's room and possessions was based on her knowledge that Parris had already violated several of his conditions, including drug use, contact with a minor, and curfew violation. And, based on Parris's mother's report, Nelson had reason to suspect Parris had violated additional community custody conditions: Parris's mother had told Nelson that she (his mother) was concerned about Parris's drug use, that he might have obtained a firearm, and that she feared he was "out of control." VRP (Nov. 16, 2009) at 9. Thus, in addition to searching for evidence of drug use, pornography, and contact with a minor female, Nelson was concerned about whether Parris might be storing an illegal firearm in his room and she believed she might find evidence of such in a photograph, video, or DVD.[8] Under these facts, Nelson had a well-founded and reasonable suspicion that the memory cards might contain evidence of additional violations, such as possession of a firearm; therefore, the requirements of community custody necessitated the search both for Parris's safety and for the safety of others.

### 3. No need for warrant to search portable memory cards' contents

¶20 Parris also argues that a memory card is equivalent to a closed container for which the owner possesses a reasonable expectation of privacy such that, al-

---

[8] Nelson testified, "[O]ftentimes, for some strange reason, offenders will put their guns in a photograph or a video or a DVD. And, in fact, that—was the case here." VRP (Nov. 16, 2009) at 23.

though he had diminished privacy expectations as a probationer, the search of storage devices requires a "heightened search requirement," which Nelson could not meet without a warrant specifically authorizing a search of the memory cards' contents. Br. of Appellant at 19. Washington case law does not support this argument; instead, Parris cites federal case law addressing warrantless searches of individuals who are *not* on probationer/parolee status. *See United States v. Chan*, 830 F. Supp. 531, 534 (N.D. Cal. 1993); *United States v. David*, 756 F. Supp. 1385, 1392-92 (D. Nev. 1991); *United States v. Barth*, 26 F. Supp. 2d 929, 936-37 (W.D. Tex. 1998). Because Parris's argument lacks authority, technically we need not further address this issue. RAP 10.3(a)(6); *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

¶21 Nevertheless, because Parris's argument presents an emerging issue of first impression that is likely to reoccur, we choose to address its merits. At the outset we note that Washington case law does not provide a clear answer to whether the law affords portable electronic storage drives the same reasonable expectations of privacy as closed containers.[9]

¶22 Accordingly, we begin with the Ninth Circuit's *Conway* analysis of Washington law under analogous facts, where a CCO searched a probationer's residence, including searching inside a shoebox located in the residence:

---

[9] We note the following cases from other jurisdictions, which we do not find instructive here because none of the computer data owners in these cases were on probation, parole, or community custody like Parris was here. None of these cases involve the corresponding diminished expectation of privacy to which persons on community custody in the State of Washington submit as a condition of being allowed to serve sentencing terms outside prison confinement. Thus, we note, but do not follow, the trend in other states and federal circuit courts to analogize and to treat electronic storage media as closed containers for search and seizure purposes. *See Barth*, 26 F. Supp. 2d at 936-37 (finding that the owner of a computer manifested a reasonable expectation of privacy in the contents of data files by storing them on a computer hard drive); *Chan*, 830 F. Supp. at 534 (analogizing data in a pager to contents of a closed container). *But see State v. Smith*, 124 Ohio St. 3d 163, 2009-Ohio-6426, 920 N.E.2d 949, 954, *cert. denied*, 131 S. Ct. 102 (2010) (arguing that cell phones were not closed containers because they did not store physical objects).

Because [the CCO] had reasonable grounds to suspect that Conway had violated the terms of his release, the search was valid under Washington law. It does not matter whether the community corrections officers believed they would find evidence of Conway's address or contraband when they opened the shoeboxes. Washington law does not require that the search be necessary to confirm the suspicion of impermissible activity, or that it cease once the suspicion has been confirmed.

*United States v. Conway*, 122 F.3d 841, 843 (9th Cir. 1997).

¶23 The State persuasively argues that once a CCO establishes reasonable cause, her search lawfully encompasses the offender's residence and personal property, including electronic storage media. Even adopting Parris's attempted analogy to a locked box, the *Conway* rationale would also apply to the content of Parris's memory cards seized as part of the personal possessions in his room: In our view, opening a shoebox to look inside at its contents is not qualitatively different from looking at data stored as "contents" on a memory card. Furthermore, neither the shoebox in *Conway* nor the memory cards here were "locked,"[10] contrary to Parris's attempted analogy to a locked container.[11]

---

[10] We find nothing in the record indicating that the memory cards prompted Nelson to enter a password or required Nelson to circumvent some other data privacy protection.

[11] Even analogizing searches of electronic storage drives to searches of other types of closed containers, it does not follow that a separate warrant expressly allowing a search of the contents of a memory card must always be a prerequisite to a lawful search, especially in the community custody condition context. For example, if a law enforcement officer has a reasonable and well-founded belief that a search is necessary to render aid or assistance to protect public safety, no warrant is required to search a closed container. *State v. McAlpin*, 36 Wn. App. 707, 716-17, 677 P.2d 185, *review denied*, 102 Wn.2d 1011 (1984). Also, the expectation of privacy afforded closed containers can be diminished, making the reasonable warrantless search of such containers lawful, if the expectation is not reasonable. In order to have a "reasonable expectation of privacy," a defendant must establish that (1) he had manifested an actual, subjective expectation of privacy, and (2) that expectation is one that society is prepared to recognize as reasonable. *State v. Gocken*, 71 Wn. App. 267, 279, 857 P.2d 1074 (1993), *review denied*, 123 Wn.2d 1024 (1994); *accord Rakas v. Illinois*, 439 U.S. 128, 143 n.12, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).

¶24 Although Parris may have had a subjective expectation of privacy in his personal effects, such an expectation was not objectively reasonable under the circumstances here. Given his status as both a sex offender and a probationer, whose effects and personal belongings are continuously subject to searches and seizures by law enforcement officials under RCW 9.94A.631(1), Parris's expectation of privacy in his personal effects fails the reasonableness prong of the *Gocken* test. *State v. Gocken*, 71 Wn. App. 267, 279, 857 P.2d 1074 (1993), *review denied*, 123 Wn.2d 1024 (1994). RCW 9.94A.631(1) operates as a legislative determination that probationers do not have a reasonable expectation of privacy in their residences, vehicles, or personal belongings (including closed containers)[12] for which society is willing to require a warrant.[13] The statute itself diminishes the probationer's expectation of privacy. We hold, therefore, that Parris had no reasonable expectation of privacy in his portable memory cards and, thus, no separate warrant was required to search the memory cards' contents.

¶25 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

WORSWICK, A.C.J., and ARMSTRONG, J., concur.

---

[12] Citing no supporting authority, Parris baldly argues that the memory cards are analogous to a closed container and, therefore, manifest an expectation of privacy triggering a warrant requirement. Nor does he cite any authority suggesting that the same law that diminishes a sex offender/probationer's expectation of privacy in his residence does not also diminish his expectation of privacy in his closed containers.

[13] *See Conway*, 122 F.3d 841, in which the Ninth Circuit upheld the constitutionality of RCW 9.94A.631 (officer had reasonable grounds to conduct search of probationer's residence and personal belongings, including inside defendant's closed shoebox).