FILED
COURT OF APPEALS
DIVISION II

2014 JUL -1  AM 8:48

STATE OF WASHINGTON

BY_____
                    DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44083-1-II |
| Respondent, | |
| v. | |
| ROBERT D. BONNELL, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Robert D. Bonnell appeals his convictions and sentences for first degree unlawful possession of a firearm and unlawful possession of a controlled substance (methamphetamine). He argues that (1) the trial court erroneously sentenced him on first degree unlawful possession of a firearm where the charging document and jury instructions supported only a conviction of second degree unlawful possession of a firearm, (2) the predicate offense for the first degree firearm charge is constitutionally invalid, and (3) the trial court erred in admitting his statements to his community corrections officer (CCO) into evidence. Bonnell raises additional claims of error in a pro se statement of additional grounds (SAG). We hold that the trial court properly limited the use of Bonnell's statements at trial and that his SAG issues lack merit. But, because the trial court instructed the jury only on the elements of second degree unlawful possession of a firearm, we reverse the conviction for first degree unlawful possession of a firearm and remand for entry of judgment and sentencing on the second degree unlawful possession of a firearm charge without addressing the validity of the predicate offense supporting the first degree charge.

## FACTS

In February 2012, Bonnell was on community custody following his conviction of possessing methamphetamine in 2011. Relevant conditions of his judgment and sentence prohibited Bonnell from possessing or consuming any controlled substance without a valid prescription and from possessing any drug paraphernalia. The conditions provided that Bonnell would be subjected to random urinalysis testing to ensure compliance with these conditions.

On February 1, Bonnell reported to CCO Mark Shaffer, who directed him to provide a urine sample. When Bonnell told Shaffer he could not do so, Shaffer told him to return the following morning at 9:00 A.M.

Bonnell did not return to the Department of Corrections (DOC) office until almost 5:00 P.M. the next day. Shaffer and CCO Curtis Perry accompanied Bonnell to the restroom to observe while he provided a urine sample. Bonnell was wearing an artificial bladder, which Shaffer regarded as a violation of the urinalysis requirement. Shaffer seized the artificial bladder and asked Bonnell how long he had been using drugs. Bonnell replied that he had been using for a little while and admitted that he had worn the fake bladder the day before. Shaffer handcuffed Bonnell and took him to his office.

When Shaffer again asked Bonnell how long he had been using drugs, Bonnell stated that he had been using for about a week. Shaffer then asked what he might find in Bonnell's residence if it were searched. Bonnell replied that Shaffer would find a sword he had been told to remove from the residence as well as a meth pipe behind a chair in the front room.

Shaffer and Perry decided to search Bonnell's residence and arranged for Hoquiam police officers to meet them and Bonnell at his home. During their search, Shaffer and Perry found a locked box in the living room, which they opened with a key from Bonnell's key chain. The box

2

contained a firearm and a butane canister. After the police officers took Bonnell to the police station, Perry opened the butane canister and found baggies of suspected methamphetamine.

Detective David Peterson escorted Bonnell to an interview room at the police station and advised him of his *Miranda* rights.[1] Bonnell agreed to speak to the detective. When asked about the firearm, Bonnell replied, "I'm so screwed, it doesn't matter." Clerk's Papers (CP) at 37. Peterson then asked about the baggies in the canister, and Bonnell acknowledged that they contained his methamphetamine. In response to an additional question about the firearm, Bonnell stated, "I'm fifty-five years old and my life is over." CP at 38. When asked if he wished to provide a written statement, Bonnell replied, "[N]o, I've been in plenty interrogations and I know this isn't going to help me." CP at 38.

The next morning, Shaffer searched Bonnell's car, which was parked outside the DOC office. Shaffer seized ammunition, a knife, and another artificial bladder.

The State charged Bonnell with first degree unlawful possession of a firearm under RCW 9.41.040(1)(a) and identified his 1994 second degree assault conviction as the required "serious offense" predicate for that charge. Bonnell moved to suppress his statements to Shaffer and Peterson as well as the evidence seized from the search of his home and car. The trial court denied Bonnell's motion but restricted the State's use of his pre-Mirandized statements to Shaffer to the cross examination of Bonnell and its rebuttal case.

Bonnell also challenged the constitutionality of his 1994 assault conviction as a predicate offense for the current first degree firearm charge and moved to exclude it. He argued that he did not fully understand the elements of the assault to which he pleaded guilty, as shown by the plea statement describing the elements as "assault a person with a weapon." CP at 44. The State

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

responded that Bonnell's description of pointing his shotgun at an officer showed that he understood the nature of the offense, which requires assault with a deadly weapon. The trial judge denied Bonnell's motion.

The State then filed an amended information which added the predicate felony of possessing methamphetamine. It reduced count I to second degree unlawful possession of a firearm. Bonnell agreed to stipulate that he had a prior conviction that barred him from possessing a firearm without waiving his objection to the constitutional validity of the prior assault conviction.

The two CCOs testified without referring to Bonnell's pre-*Miranda* statements. Peterson testified that after he advised Bonnell of his *Miranda* rights, Bonnell admitted that he was "so screwed, it doesn't matter." Report of Proceedings (RP) at 119. Peterson also testified that Bonnell admitted owning the methamphetamine.

Roger Hall, Bonnell's stepbrother, testified for the defense. Hall said that he gave Bonnell the locked box and its key so that Bonnell could give them to Hall's son. He added that he did not tell Bonnell that the box contained a firearm, and he denied knowing that the butane canister contained methamphetamine.

Bonnell then testified and denied admitting ownership of the methamphetamine. He also denied making any statement after the detective read him his *Miranda* rights, and he claimed he never opened the box from Hall. Bonnell explained that any drugs and paraphernalia he mentioned to Shaffer and Peterson were marijuana and a bong, rather than methamphetamine and a pipe.

In the State's rebuttal, Shaffer described Bonnell's admissions about using drugs and about the methamphetamine pipe, and Peterson testified about Bonnell's admission that the

4

methamphetamine in the canister belonged to him. On surrebuttal, Bonnell insisted that he had admitted possessing marijuana rather than methamphetamine.

The court then read the following stipulation to the jury: "The parties do stipulate and agree that the defendant has previously been convicted in Grays Harbor Superior Court of a criminal offense which prohibits his possession of a firearm. This stipulation shall serve as proof beyond a reasonable doubt that the defendant has a prior conviction." RP at 179. The "to convict" instruction for count I stated that it included the elements of first degree unlawful possession of a firearm and listed them as follows:

> (1) That on or about February 2, 2012, the defendant knowingly possessed or had under his control a firearm;
> (2) That the defendant had previously been convicted of a criminal offense that prohibited him from possessing or having a firearm under his control.
> (3) That the possession or control of the firearm occurred in the State of Washington.

CP at 66.

During closing argument, the defense contended that Bonnell did not knowingly possess the firearm in the locked box and that he unwittingly possessed the methamphetamine because he did not know what the box contained. The jury found Bonnell guilty of first degree unlawful possession of a firearm and possession of methamphetamine. The trial court imposed concurrent standard range sentences of 78 months on count I and 24 months on count II. Bonnell's initial judgment and sentence listed his conviction on count I as second degree unlawful possession of a firearm, but the trial court subsequently issued a corrected judgment and sentence changing that reference to first degree unlawful possession of a firearm.

Bonnell appeals his convictions.

ANALYSIS

I.   USE OF UN-MIRANDIZED STATEMENTS

Bonnell argues that the trial court erred in admitting his statements to Shaffer because they were not preceded by *Miranda* warnings. He argues that without these statements, Shaffer would not have searched his residence and discovered the firearm and methamphetamine.

This argument fails on several grounds. We note initially that even if Bonnell's statements to his CCO were made in violation of his *Miranda* rights, the only remedy for this violation was the exclusion of the unwarned statements from the State's case in chief. *United States v. Patane*, 542 U.S. 630, 641-42, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004). The Fifth Amendment does not require the suppression of physical evidence derived from an un-Mirandized confession unless the statement was actually coerced. *State v. Russell*, 125 Wn.2d 24, 56, 882 P.2d 747 (1994); *see also State v. Wethered*, 110 Wn.2d 466, 473-74, 755 P.2d 797 (1988) (evidence is admissible even if discovered through a statement obtained from a defendant in violation of *Miranda*, so long as the statement was obtained without use of coercive tactics). Bonnell does not allege that his statements to Shaffer were obtained by coercive tactics. Consequently, any *Miranda* violation did not affect the validity of the search and the resulting evidence.

Furthermore, the trial court admitted the statements in question only to impeach Bonnell's testimony that he never admitted possessing either methamphetamine or a methamphetamine pipe. Although the privilege against self-incrimination precludes the use of a defendant's statements unless the privilege was knowingly waived, the privilege may not be asserted to prevent the State from using a defendant's statements to impeach his credibility after he has taken the stand. *State v. Holland*, 98 Wn.2d 507, 519, 656 P.2d 1056 (1983) (citing

*Harris v. New York*, 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971); *State v. Davis*, 82 Wn.2d 790, 514 P.2d 149 (1973)). The trial court so limited the use of Bonnell's statements to his CCO, and we need not discuss this issue further.

II.   LESSER DEGREE CHARGE AND INSTRUCTION

Bonnell argues that the trial court erred in sentencing him on first degree unlawful possession of a firearm where the charging document and jury instructions supported only a sentence on second degree unlawful possession of a firearm. We agree.

To be guilty of first degree unlawful possession of a firearm, a class B felony, a defendant must have a prior conviction that qualifies as a serious offense. RCW 9.41.040(1)(a), (b). Second degree unlawful possession of a firearm, a class C felony, requires only a prior conviction of a felony that is not a serious offense, or certain gross misdemeanors. RCW 9.41.040(2)(a), (b). Bonnell's prior assault conviction qualifies as a serious offense, but his prior methamphetamine conviction does not. RCW 9.41.010(3)(a), (18)(a), (b); RCW 69.50.4013.

After Bonnell challenged the constitutionality of his prior assault conviction, the State amended the charge on count I to second degree unlawful possession of a firearm and included both the prior assault and methamphetamine convictions as predicate convictions. Bonnell argues that by accusing him of second degree unlawful possession of a firearm under RCW 9.41.040(2)(a), the State gave him notice only that he was charged with that offense. *See State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991) (defendant must have notice of accusations against him so he can prepare adequate defense).

The State responds that the amended information's references to second degree unlawful possession of a firearm and the corresponding statutory citation are scrivener's errors that have no impact on Bonnell's conviction because he had full notice of the crime charged. *See State v. Weiding*, 60 Wn. App. 184, 186, 803 P.2d 17 (1991) (error in citation of statute does not invalidate an information unless the error prejudices or affects the defendant's substantial rights). The State also argues that Bonnell was put on notice during the hearing that the amended information alleged both first and second degree unlawful possession of a firearm. We see no such notification; the State mistakenly asserted during the hearing that the initial and amended charging documents were identical except for the added drug offense.

But, even if we overlook the errors in the charging document, we cannot overlook the error in the "to convict" instruction. We review alleged errors of law in jury instructions de novo. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005). An instruction purporting to list all of the elements of a crime must in fact do so; when a "to convict" instruction fails to state the law completely and correctly, a conviction based upon it cannot stand. *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). We may review the alleged omission of an element in a "to convict" instruction for the first time on appeal. *State v. Davis*, 154 Wn.2d 291, 306, 111 P.3d 844 (2005).

As Bonnell asserts, the "to convict" instruction included the elements of second degree possession of a firearm rather than those of first degree possession of a firearm by requiring the jury to find that he had a prior conviction of a criminal offense and not a serious offense. The State argues that the stipulation relieved it of its burden to prove the predicate offense needed to support the first degree charge, but Bonnell stipulated only to a prior "criminal offense." RP at 179. *See State v. Wolf*, 134 Wn. App. 196, 139 P.3d 414 (2006) (defendant stipulated to prior

8

serious offense when charged with first degree unlawful possession of a firearm). Both the stipulation and the "to convict" instruction reflected only the elements of second degree unlawful possession of a firearm.

Where the jury was instructed on a lesser degree crime and necessarily found each element of that crime in reaching its verdict, we may remand for resentencing on the lesser offense. *In re Pers. Restraint of Heidari*, 174 Wn.2d 288, 292-94, 274 P.3d 366 (2012). Bonnell argues that the jury was essentially instructed on the offense of second degree unlawful possession of a firearm, and the parties agree that the jury verdict established that each element of that offense was proved beyond a reasonable doubt. Consequently, we reverse Bonnell's conviction for first degree unlawful possession of a firearm and remand for entry of judgment and sentencing for second degree unlawful possession of a firearm.[2]

III.     SAG

In his SAG, Bonnell contends initially that the trial court's instruction incorrectly defined constructive possession for the jury. Bonnell cites instruction 8, which contained the definition of a firearm; instruction 9 defined possession. Bonnell faults the instruction for failing to include legal citations as well as "nexus" language. The trial court properly excluded legal citations from its instructions and properly defined constructive possession without reference to an additional nexus requirement. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL: 133.52, at 617 (2008). We reject this claim of instructional error.

---

[2] Given this resolution, we need not address the constitutionality of the guilty plea supporting the predicate felony for the first degree charge. *See State v. Brown*, 127 Wn.2d 749, 756-57, 903 P.2d 459 (1995) (double jeopardy bars retrial on charges greater than charge for which defendant was convicted).

Bonnell next asserts that the evidence seized from his residence could not support criminal charges because it was not the result of a warrant-supported search conducted by a police officer. A warrantless search of a parolee's or probationer's residence is permissible if a CCO has a well-founded suspicion that a release violation has occurred. RCW 9.94A.631; *State v. Parris*, 163 Wn. App. 110, 118-19, 259 P.3d 331 (2011). If a CCO discovers evidence of a criminal violation, he may submit that evidence to law enforcement officials for eventual criminal prosecution. *United States v. Conway*, 122 F.3d 841, 842 (9th Cir. 1997); *Parris*, 163 Wn. App. at 115; *State v. Jungers*, 125 Wn. App. 895, 898-99, 106 P.3d 827 (2005). Bonnell's argument that a CCO's search can support only prosecution for a sentence violation is without merit.

In a related argument, Bonnell contends that the trial court erred in permitting his arrest for a sentence violation that led to felony charges. Aside from the fact that Bonnell did not challenge his arrest below, we note that the trial court found ample cause for the CCO's conclusion that Bonnell violated a condition of his sentence by attempting to twice use an artificial bladder when asked to provide a urinalysis sample. The fact that additional charges resulted from the ensuing search does not undermine the legitimacy of Bonnell's arrest.

Bonnell also argues that his arrest was unlawful because Shaffer had to report his sentence violation to a court before arresting him. Former RCW 9.94A.631 (2009) provides otherwise:

> (1) If an offender violates any condition or requirement of a sentence, a community corrections officer may arrest or cause the arrest of the offender without a warrant, pending a determination by the court or a department of corrections hearing officer.

Under this statute, an arrest may precede a court's determination that the sentence has been violated.

Bonnell asserts further that because the firearm and baggies of methamphetamine did not contain his fingerprints, the State failed to prove possession. Shaffer admitted on cross examination that the items seized from Bonnell's residence were not tested for fingerprints. This admission does not undermine the evidence showing that Bonnell possessed both the firearm and the methamphetamine, and we reject this claim of error.

Bonnell next argues that the trial court erred in admitting evidence that the gun was in plain view. We see no plain view ruling in this record, and no objection on this ground. Accordingly, we need not reach this issue. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

Bonnell argues further that the trial court erred by not suppressing evidence based on testimony by Shaffer that was ultimately proven false. Bonnell maintains that because he never actually refused to give a urine sample and never gave a sample that tested positive for drugs, Shaffer unlawfully arrested him for violating his sentence. We see no error in the trial court's conclusion that Bonnell violated the sentence condition requiring him to give urine samples upon request by using a device intended to thwart that requirement.

44083-1-II

We affirm the conviction for unlawful possession of a controlled substance, reverse the conviction for first degree unlawful possession of a firearm, and remand for entry of judgment and sentencing on second degree unlawful possession of a firearm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Johanson, C.J.

12