IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>       v.<br><br>ROMAN JAMES ALLAH,<br><br>                    Appellant. | No. 85149-7-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

DíAZ, J. — Roman James Allah appeals his conviction for unlawful possession of a firearm. He argues the community custody officer's (CCO) warrantless search of his vehicle for the firearm in question lacked a sufficient nexus to the (acknowledged) probation violation and, thus, was unconstitutional. The State attempts to justify the search by pointing additionally only to Allah's prior criminal history and his prior associations. We hold those facts do not establish a sufficient basis or nexus for the vehicle search, reverse the court's denial of the related pre-trial motion to suppress, reverse Allah's conviction, and remand for further proceedings.

## I.     BACKGROUND

In October 2020, Allah was on probation for a 2017 firearm conviction and driving his car in the Central District of Seattle, when a police officer pulled him

over on suspicion of driving with a suspended license.[1]  After learning of Allah's probationary status, the officer contacted the Department of Corrections (DOC) and asked for a CCO to travel to the scene to discuss next steps.[2]

While he was on his way to the scene, CCO Stephen Lambert reviewed Allah's prior conditions of community custody and noted that he was in violation of a geographic boundary condition, which excluded him from the Central District. According to CCO Lambert's later testimony, Allah's prior CCO likely sought this geographic restriction because a police department listed Allah in a security group threat data base as a member of a gang associated with the Central District.

Upon arriving at the scene, CCO Lambert talked with Allah and then searched the car, specifically for a firearm.  CCO Lambert located a firearm on the floorboard underneath the driver's seat.  He collected the firearm as evidence and arrested Allah.

The State charged Allah with one count of unlawful possession of a firearm in the first degree as his prior convictions barred him from possessing firearms. Pre-trial, Allah moved to suppress the firearm evidence from CCO Lambert's search under CrR 3.6 (motion), arguing in pertinent part that there was an insufficient nexus between the search and Allah's geographic violation.  At the hearing on the motion, and as will be further discussed below, CCO Lambert

---

[1] In one witness's words, Allah had been "reporting and been in compliance" with his probation "for the most part, [with] one violation back in April" 2020.

[2] According to a CCO's testimony, it is "standard procedure" that "[i]f someone is active DOC and if they're contacted by someone with the Seattle police department we actually encourage them to contact us," as it helps DOC "monitor basically their compliance and supervision."

testified that the "geographic boundary [violation] alone wouldn't necessitate a search," and the "nexus for [his] search" was Allah's "history of firearms possession." The court denied Allah's motion.

In December 2022, a jury convicted Allah as charged, and the court sentenced him to 41 months in prison. Allah now timely appeals.

## II.    ANALYSIS

### A.    Constitutional Requirements for Warrantless Searches

Article I, section 7 of the Washington Constitution provides a robust privacy right, stating that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. "Warrantless seizures are per se unreasonable . . . subject to a few 'jealously and carefully drawn' exceptions." State v. Acrey, 110 Wn. App. 769, 773, 45 P.3d 553 (2002) (quoting State v. Kinzy, 141 Wn.2d 373, 384, 5 P.3d 668 (2000)). The State has the burden of proving a warrantless search falls within an exception. Id.

"Parolees and probationers have diminished privacy rights because they are persons whom a court has sentenced to confinement but who are serving their time outside the prison walls." State v. Jardinez, 184 Wn. App. 518, 523, 338 P.3d 292 (2014). As such, a probationer "may be searched on the basis of a well-founded or reasonable suspicion of a probation violation[,]" rather than a warrant supported by probable cause. State v. Winterstein, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009).[3]

---

[3] The legislature codified this exception to the warrant requirement at RCW 9.94A.631, which reads in relevant part, "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a [CCO]

Even with probationer's diminished privacy rights, however, article I section 7 of the Washington Constitution "permits a warrantless search of the property of an individual on probation *only* where there is a nexus between the property searched and the alleged probation violation." State v. Cornwell, 190 Wn.2d 296, 306, 412 P.3d 1265 (2018) (emphasis added). Permitting searches without a nexus would allow "'fishing expedition[s] to discover evidence of other crimes, past or present.'" Id. at 304 (quoting State v. Olsen, 189 Wn.2d 118, 134, 399 P.3d 1141 (2017)). After all, "[i]f a prior conviction, not to mention a prior arrest, should afford grounds for believing that an individual is engaging in criminal activity at any given time thereafter, that person would never be free of harassment, no matter how completely he had reformed." State v. Hobart, 94 Wn.2d 437, 446-47, 617 P.2d 429 (1980).

And still, "[w]hen there is a nexus between the property searched and the suspected probation violation, an individual's reduced privacy interest is safeguarded in two ways." Cornwell, 190 Wn.2d at 304. First, a CCO must have "'reasonable cause to believe' a probation violation has occurred before conducting a search at the expense of the individual's privacy." Id. (quoting RCW 9.94A.631(1)). Second, "the individual's privacy interest is diminished only to the extent necessary for the State to monitor compliance with the particular probation condition that gave rise to the search. The individual's other property, which has no nexus to the suspected violation, remains free from search." Id.

may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property."

4

"When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." Ladson, 138 Wn.2d at 359-60. However, such a "constitutional error may be considered harmless if we are convinced beyond a reasonable doubt that any reasonable trier of fact would have reached the same result despite the error." State v. Thompson, 151 Wn.2d 793, 808, 92 P.3d 228 (2004). In other words, "we consider the untainted evidence admitted at trial to determine if it is so overwhelming that it necessarily leads to a finding of guilt." Id.

We review the validity of a warrantless search de novo. State v. Kypreos, 110 Wn. App. 612, 616, 39 P.3d 371 (2002). We review conclusions of law relating to the suppression of evidence de novo and findings of fact for substantial evidence. Winterstein, 167 Wn.2d at 628. Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Generally, we view trial court findings as verities, provided there is substantial evidence to support them. Id.

B.    Application of Law to Facts

At the CrR 3.6 hearing, CCO Lambert confirmed the only probation violation was "the violation of the geographic boundary" condition. And, again, he admitted that "that alone wouldn't necessitate a search." Id. Instead, he explained that "the nexus for [his] search" was that Allah "had a history of firearms possession. So it was reasonable to search for additional evidence of violation of firearms violation." Id. In other words, according to the CCO, the only fact that created a nexus

5

between the probation (geographic boundary) violation and the search of Allah's vehicle was his past firearm conviction.[4]

In denying Allah's motion to suppress, the court did not rely on his prior criminal history and, instead, found that Allah's "car was within the restricted geographic area. That, in itself, is a nexus." The court further commented that the geographic restriction was there "for a reason, namely to – to try to promote compliance with the law and with the conditions of probation and to keep the defendant away from areas that *might* lead to reoffending." (Emphasis added).

In its briefing on appeal, the State offers a third theory, namely, that the nexus between the property searched (vehicle) and the (geographic) probation violation was established by the facts that "Allah had previously illegally possessed firearms *and* associated with a gang in the Central District." (Emphasis added).

At oral argument, the State offered "to fall on its sword" with respect to the

---

[4] CCO Lambert also thrice confirmed that his search was focused primarily but not exclusively on finding a firearm. He and the prosecutor had the following exchange at the CrR 3.6 hearing:

> PROSECUTOR: In searching the vehicle were you looking for anything in particular?
> LAMBERT: Yeah, specifically a firearm.
> PROSECUTOR: Was there anything else that would be of interest as well?
> LAMBERT: *If I came across something else, yes.* But my search was specifically for the item my nexus for which was a weapon, firearm.
> PROSECUTOR: So you [sic] primary was the – was whether or not there was a firearm in the vehicle?
> LAMBERT: Correct.

(emphasis added). The italicized statement suggests a non-tailored search, which would provide an additional basis to find the search unconstitutional, but we need not reach this issue. See Cornwell, 190 Wn.2d at 304 (holding the constitution requires a targeted search, even where there is a nexus).

foregoing theories, and asked this court to focus on whether the "CCO ha[d] reasonable suspicion that Mr. Allah had a gun in his possession . . . that is the singular issue for the constitutionality of the search." Wash. Ct. of Appeals oral argument, State of Washington v. Roman James Allah, No. 85149-7-I (April 12, 2024), at 9 min., 38 sec. through 9 min., 50 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024041150/?eventID=2024041150.[5] When the State was asked, however, what would support reasonable suspicion, it cited to the geographic boundary violation, Allah's past gang affiliations, and his prior firearm conviction.[6] Id. at 10 min., 35 sec., through 14 min., 20 sec.

We hold that, under any of the theories the court or the State offered, the search was unconstitutional.

Our Supreme Court's decision in Cornwell, where it stuck down a search for lacking a sufficient nexus, is quite on point. 190 Wn.2d at 307. There, the CCO arrested Cornwell based on his probation violation for failure to report. Id. at 299. Following the arrest, the CCO searched the defendant's car, locating contraband. Id. At the CrR 3.6 hearing, the CCO testified the search was "'to make sure there's

---

[5] For his part, Allah did not object to this reframing, stating that, if the court wanted to resolve the matter on the lack of reasonable suspicion alone, "so be it." Wash. Ct. of Appeals oral argument, supra at 14 min., 20 sec. through 14 min., 56 sec.

[6] In full, the State argued that reasonable suspicion was supported by "one, there's the geographical boundary violation that's part of it. Number two, the geographical boundary violation was prompted or inspired . . . by the fact that Mr. Allah was affiliated with the Gangster Disciples gang that used the Central District as its turf. And that he had a prior history of unlawful possession of a firearm. Those are the three things." Wash. Ct. of Appeals oral argument, supra at 13 min., 50 sec. through 14 min., 20 sec.

no *further* violations of his probation.'" Id. at 306. Our Supreme Court held that, while the CCO "may have suspected Cornwell violated other probation conditions, the only probation violation supported by the record is Cornwell's failure to report." Id. As such, there was no nexus between property and the crime of failure to report and the failure to report violation was already established, rendering the search unnecessary for that purpose. Id.

Similarly, here, the geographic violation, without more, provides no reason why Allah may have had a firearm. Again, a warrantless search of a probationer can occur "only where there is a nexus between the property searched and the alleged probation violation." Id. at 306. Just as the CCO's desire in Cornwell to avoid "further" probation violations is insufficient to establish such a nexus, so is the court's desire to generically "promote compliance with the law" and avoid circumstances that "might lead to reoffending." Id.

The court in Cornwell also analyzed two cases to further illustrate the above principles, which is particularly helpful here as they address the State's other theories: Jardinez and State v. Parris, 163 Wn. App. 110, 259 P.3d 331 (2011), overruled in part by Cornwell, 190 Wn.2d at 306. Cornwell, 190 Wn.2d at 304-06.

In Parris, the defendant had violated "several of his probationary requirements: A urinalysis test revealed methamphetamine; he had failed to participate in a drug and alcohol treatment program; and he had failed to provide proof of work or legitimate income." 163 Wn. App. at 114. The following month, police had arrested Parris for driving with a suspended license, and the CCO went to his home. Id. Contemporaneously, the defendant's mother told the CCO that

the defendant threatened to obtain a firearm in violation of his probation. Id. at 114, 120. The CCO then searched Parris' room and found memory cards containing inter alia photos of firearms. Id. at 115. This court held that, because of the "mother's report, [the CCO] had reason to suspect Parris had violated additional community custody conditions," including "that he might have obtained a firearm." Id. at 120. This court upheld a search of a probationer's property. Id. In its review, Cornwell noted that "Parris shows that searches tethered to a particular probation condition are a practical and effective tool that further the State's interest in monitoring compliance and promoting public safety while still protecting individuals from arbitrary searches." Cornwell, 190 Wn.2d at 305.

In contrast, this court in Jardinez struck down a search of a probationer's property. 184 Wn. App. at 530. There, the defendant had pled guilty to a drive-by-shooting and unlawful possession of a firearm. Id. at 520. While on probation, Jardinez failed to report and had separately admitted to using marijuana in violation of his conditions of release. Id. at 521. Jardinez was arrested, and the CCO used these violations to search Jardinez' iPod, uncovering a photo of the defendant with a firearm, for which he was convicted. Id. at 521-22. This court overturned Jardinez's conviction, holding that the CCO "had no reason to believe . . . Jardinez possessed a firearm *before* [the CCO] opened the iPod[,]" i.e., at the moment of or prior to the search. Id. at 528.

This case is much closer to Jardinez than Parris. In Parris, the CCO had independent evidence from the defendant's mother of her son directly indicating Parris may possess a firearm. Parris, 163 Wn. App. at 120. In Jardinez, this court

9

found the search was unconstitutional despite Jardinez's clear history of firearm convictions, including one for a drive-by-shooting. Jardinez, 184 Wn. App. at 520. Here, similar to the facts in Jardinez, there was no evidence specifically indicating Allah may have a firearm in violation of his probation immediately prior to the search.

As in that case, there is here, by way of examples only, no report someone saw Allah with a firearm, no report Allah had been threatening someone with a firearm, and no reference to a firearm on social media. Except for Allah's prior conviction and associations, there is no additional fact providing a foundation for a nexus between the geographic probation violation and the search of the car. Under Jardinez, the CCO's express reliance on his criminal history is insufficient.

Finally, in support of its reframed argument, the State cited at oral argument for the first time to an unpublished case,[7] asserting that this court has held that a probationer's prior criminal history need not be considered "in a vacuum" but may be combined with other factors to establish reasonable suspicion.[8] Wash. Ct. of

_____

[7] Namely, the State cited to State v. Turner, No. 56129-8-II, (Wash. Ct. App. Oct. 25, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056129-8-II%20Unpublished%20Opinion.pdf, without objection. "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions." GR 14.1(c). "However, unpublished opinions of the Court of Appeals filed on or after March 1, 2013, may be cited as nonbinding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate." GR 14.1(a). Here, we are responding to the State's citation of this case as persuasive authority.
[8] In full, the State argued that "there is an unpublished case called Turner . . . it talks about how all of these things can be combined together. It's not just somebody's history in a vacuum. I grant you that history in a vacuum or all by itself isn't enough. But it can be part of the equation, especially when you're a CCO looking at a parolee." Wash. Ct. of Appeals oral argument, supra at 19 min., 54 sec. through 20 min., 20 sec.

Appeals oral argument, <u>supra</u> at 19 min., 54 sec., through 20 min., 20 sec. The State appears to be referencing the case's holding that "although Turner's past violations alone could not have justified a search, it was reasonable for Curtright to consider that Turner had unlawfully possessed controlled substances on at least *three separate occasions within the past year* when evaluating all of the facts. <u>State v. Turner</u>, No. 56129-8-II, slip op. at 7 (Wash. Ct. App. Oct. 25, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056129-8-II%20Unpublished%20Opinion.pdf (emphasis added).

Allah's situation is readily distinguishable as there is nothing in the record that suggests that any of Allah's CCOs had repeatedly caught, or was aware of any recent incident involving, Allah unlawfully possessing a firearm within the geographic boundary prior to the vehicle search.

In sum, neither CCO Lambert or the State provide a sufficient explanation of *why* any person would reasonably believe Allah may have had a weapon immediately preceding the search. No matter how the constitutionality of the search is conceptualized—i.e., whether as requiring a nexus between the boundary violation and the vehicle searched, or as simply requiring reasonable suspicion—the logical gap remains. As to the geographic boundary, CCO Lambert admitted it was irrelevant to his decision to search. As to Allah's prior firearm conviction, our Supreme Court has long explained that a probationer's past convictions alone are not enough to support a search. <u>Hobart</u>, 94 Wn.2d at 446-47. Otherwise, a probationer "would never be free of harassment, no matter how

completely he had reformed." Id.[9]

Finally, the State does not argue the error was harmless. As the "State has the burden of proving the error was harmless beyond a reasonable doubt[,]" we need not consider whether there was harmless error. State v. Miller, 184 Wn. App. 637, 647, 338 P.3d 873 (2014). We therefore reverse Allah's conviction.

C.     CONCLUSION

For the reasons above, we reverse the court's denial of Allah's CrR 3.6 motion to suppress the firearm evidence, reverse Allah's conviction, and remand the matter to the court for future proceedings. We otherwise reach no further issues.

Díaz, J.

WE CONCUR:

Birk, J.                                    Smith, C.J.

---

[9] The State makes additional arguments regarding the scope of the search, the police officer's restraint in not arresting Allah immediately, and the difference between the types of violations in Cornwell and here. However, Cornwell requires a nexus to even engage in a search, regardless of these factors. As such, we need not respond further to these arguments.