[No. 22393–3–I. Division One. December 11, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT
LUCAS, *Appellant*.

*Lenell Nussbaum* and *Eric J. Nielsen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William Lipscomb, Deputy,* for respondent.

SWANSON, J.—The defendant, Robert Lucas, appeals his conviction for possession of cocaine while on release pending appeal of previous convictions. He argues that the trial court erred in denying his pretrial motion to suppress evidence obtained in a warrantless search of his residence.

On January 30, 1987, Robert Lucas was convicted of several crimes.[1] Following sentencing, Lucas appealed. On May 5, 1987, the trial court signed Conditions of Release Pending Appeal under which Lucas was released "on condition of probation supervision by a Community corrections officer and subject to the rules promulgated by the Department of Corrections". Pursuant to his release on probation, Lucas reported to his probation officer, Irv Harra, on June 2, 1987. Lucas and Officer Harra signed a Department of Corrections Standard Conditions and Sentence Requirements form. Condition 5 included this provision: "submit to a search of your person, residence, vehicle and other

---

[1]Robert Lucas was found guilty of failing to obey a police officer (count 1), assault in the third degree (count 2), and malicious mischief in the third degree (count 3).

belongings when ordered to do so by the community corrections officer." Lucas signed this form directly below the following statement:

> I have read or have had read to me the foregoing conditions and sentence requirements which are applicable in my case. Each of these conditions/requirements have been explained to me and I hereby agree to comply with them.

In July 1987, Lucas' supervision was transferred from the Seattle Community Corrections Office to Officers Pinkerton and Casey at the Northgate office. On July 24, 1987, Pinkerton and Casey went to Lucas' home to conduct a transfer interview but Lucas was not at home. However, while standing in the driveway when leaving his residence, Pinkerton and Casey saw in plain view, through sliding glass doors, a plastic container that appeared to contain marijuana and rolling papers. Pinkerton had seen marijuana hundreds of times before and recognized the marijuana and paraphernalia as illegal contraband. Four days later, on July 28, 1987, Pinkerton and Casey returned to investigate the suspected violation of probation and to conduct the transfer interview. When they confronted Lucas at the door of the residence, they informed him that they were there for the transfer interview. Lucas asked if they had a warrant, even though they had not informed Lucas that they wanted to search the residence. Pinkerton explained to Lucas that they did not need a warrant because of the probation conditions. Lucas became nervous and uneasy, looked around the room, and reiterated his question regarding a warrant. However Lucas allowed Pinkerton and Casey to enter the residence. The suspicions of Pinkerton and Casey were confirmed by Lucas' questions and behavior.

When Pinkerton and Casey first entered the residence, Lucas went over to a coffee table and looked into an ashtray. Pinkerton followed Lucas, but saw nothing in the ashtray or on the coffee table. Lucas then appeared to focus

his attention on an envelope on the fireplace mantle. Pinkerton, who was familiar with LSD, could see that the envelope contained LSD. Pinkerton picked up the envelope and asked Lucas what was in it. Lucas grabbed the envelope, ran outside and disposed of its contents. Pinkerton then apprehended Lucas and attempted to place him under arrest. However, Lucas broke free, ran to the refrigerator, took out a Tupperware container and left the house with it. Pinkerton again apprehended Lucas about two blocks from the residence.

Seattle police officers were called and they arrested Lucas. The Tupperware container was found under the stairway of a neighbor's home. It and a wooden box found in Lucas' home contained cocaine.

On October 28, 1987, Lucas was charged with possession of cocaine. Lucas moved to suppress the evidence discovered during the warrantless search of his residence. The trial court denied the motion. On January 21, 1988, Lucas was found guilty of possession of cocaine as charged. Following entry of judgment and sentence, Lucas appealed.

## DIMINISHED EXPECTATION OF PRIVACY

Lucas first argues that the warrantless search of his home was an unconstitutional violation. The State justifies the search on the basis that Lucas was released subject to probation supervision and so had the same diminished expectation of privacy as probationers and parolees still serving their sentences. Lucas disagrees, arguing that his status as a defendant released pending appeal differs from that of probationers and parolees because they are serving sentences while he is not.

Searches without a valid warrant are generally "unreasonable" per se unless it is demonstrated that public interest justifies creation of an exception to the general warrant requirement. *State v. Simms,* 10 Wn. App. 75, 85, 516 P.2d 1088 (1973), *review denied,* 83 Wn.2d 1007 (1974). Under

the Fourth Amendment and article 1, section 7 of our constitution, probationers and parolees have a diminished right of privacy permitting a warrantless search if reasonable. *State v. Patterson,* 51 Wn. App. 202, 204, 752 P.2d 945 (*see also State v. Lampman,* 45 Wn. App. 228, 724 P.2d 1092 (1986); *State v. Keller,* 35 Wn. App. 455, 667 P.2d 139, *review denied,* 100 Wn.2d 1023 (1983); *State v. Coahran,* 27 Wn. App. 664, 620 P.2d 116 (1980); *State v. Simms, supra*), *review denied,* 111 Wn.2d 1006 (1988).

> The rationale for excepting parolees and probationers from the general requirement that a residential search be conducted pursuant to a warrant and upon probable cause, is that a person judicially sentenced to confinement but released on parole remains in custodia legis until expiration of the maximum term of his sentence, *i.e.,* he is simply serving his time outside the prison walls.

*Simms,* 10 Wn. App. at 82 (*see also Keller,* 35 Wn. App. at 460). This exception is also justified in order to effectuate rehabilitation. *Simms,* 10 Wn. App. at 85. Lucas argues that because his judgment and sentence was stayed pending appeal he is not in "custodia legis" and, therefore, does not fall within the warrantless search exception that applies to parolees and probationers.

■ Article 1, section 7 of our state constitution provides broader protections than the United States Constitution's Fourth Amendment. *Patterson,* 51 Wn. App. at 204; *Lampman,* 45 Wn. App. at 231. The emphasis of Const. art. 1, § 7 is on protecting the individual's right to privacy, while the emphasis of the Fourth Amendment is on curbing governmental actions. *Patterson,* 51 Wn. App. at 204; *Lampman,* 45 Wn. App. at 232. A probationer or parolee, however, has a diminished right to privacy because "the State has a continuing interest in the defendant and its supervision of him *as a probationer"* such that the defendant can expect state officers and agents to scrutinize him closely. *Lampman,* 45 Wn. App. at 233 n.3.

Here, the State has a continuing interest in Lucas as a convicted criminal defendant and its supervision of him as one released pending appeal but subject to conditions of

probation such that he should expect close scrutiny. Lucas has been convicted but execution of the judgment and sentence has only been stayed due to his appeal. RCW 9.95-.062. While the stay of execution acts to preserve the status quo, it does not release him from his obligation to serve the full penalty imposed by the sentence. *State v. Johnson,* 105 Wn.2d 92, 95–97, 711 P.2d 1017 (1986). The stay merely suspends the power of the trial court to issue execution of the judgment and sentence. *Johnson,* 105 Wn.2d at 95–96. The trial court, however, has limited jurisdiction over the defendant pending appeal and may not only set conditions on the defendant's release pending appeal, but may also conduct revocation hearings for violations occurring during the pendency of the appeal. RAP 7.2(f); CrR 3.2(f)–(i); *Johnson,* 105 Wn.2d at 96–97. If the convicted defendant spends time in jail pending his appeal, the State must give credit for that time. *State v. Phelan,* 100 Wn.2d 508, 515, 671 P.2d 1212 (1983).

Based on these factors, Lucas should expect close scrutiny by the State invading his privacy. Furthermore, because the court can set his conditions for release pending appeal and he must receive credit for any time spent in jail pending appeal, Lucas is subject to probation supervision until and unless his conviction is reversed. Accordingly, a defendant released on conditions of probation supervision pending appeal has the same diminished expectation of privacy as a probationer serving his sentence. Therefore, the warrantless search of Lucas' home did not violate constitutional protections.

### WARRANTLESS SEARCH—CONDITION OF RELEASE

Lucas next argues that the search was unconstitutional because warrantless searches were not "explicitly" made a condition of his release pending appeal. In support of this argument, Lucas relies upon *State v. Keller,* 35 Wn. App. 455, 457, 667 P.2d 139, *review denied,* 100 Wn.2d 1023 (1983). In *Keller,* the defendant was arrested and convicted of delivery of a controlled substance. He was released on

bond pending appeal subject to the "same terms and conditions of release, except he will be under supervision during the terms of the release . . .". On appeal, this statement was found to be ambiguous because it failed to "explicitly indicate" to the defendant which probation conditions imposed at sentencing would also become conditions of release pending appeal.

■ Here, the conditions of Lucas' release pending appeal were explicitly indicated by written order. This order, titled "Conditions of Release Pending Appeal", provided, in part, that Lucas was being released pending appeal "[o]n condition of probation supervised by a Community Corrections officer and subject to the rules promulgated by the Department of Corrections . . .". Lucas approved this document by signing it. Pursuant to his release, Lucas reported to his probation/community corrections officer where he was presented with a "Standard Conditions and Sentence Requirements" form. This form provided, in part, that one condition of probation was to "[s]ubmit to a search of your person, residence, vehicle and other belongings when ordered to do so by the community corrections officer." Lucas signed this document directly below language indicating that he had read each of the conditions, had them explained to him, and agreed to comply with them.

These documents, signed by Lucas, explicitly indicate that his release pending appeal was conditioned on probation supervised by the Department of Corrections and subject to its rules. These rules were explained to Lucas when he reported to his community corrections officer following his release from jail. The statements in these documents are clear and could leave no doubt regarding the conditions of Lucas' release. Accordingly, Lucas' reliance on *Keller* is unfounded.

### WARRANTLESS SEARCH—AUTHORITY OF LAW

■ Next, Lucas argues that the warrantless search violated article 1, section 7 of our constitution because it was

conducted "without authority of law." Const. art. 1, § 7 provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Generally, the term "authority of law" includes authority granted by valid statutes, the common law, and rules promulgated by the Supreme Court. *State v. Gunwall,* 106 Wn.2d 54, 68–69, 720 P.2d 808 (1986).

Here, case law and court rules provide the necessary authority. A series of appellate cases establish an exception to the warrant requirement for searches of parolees and probationers. *State v. Patterson, supra; State v. Lampman, supra; State v. Keller, supra; State v. Coahran, supra; State v. Simms, supra.* Further, a court authorizing the release of a defendant pending appeal may impose conditions which, if violated, may result in a revocation of release. CrR 3.2(f)–(i); RAP 7.2(f). Accordingly, the search here was conducted under authority of law.

### Warrantless Search—Probable Cause

 Lucas also argues that Const. art. 1, § 7 requires that there be probable cause to believe that a defendant is violating a condition of probation before a warrantless search is justified. This issue has been settled by *Patterson,* 51 Wn. App. at 204–05:

> Article 1, section 7 of our state constitution provides broader protections than the Fourth Amendment. *State v. Stroud,* 106 Wn.2d 144, 148, 720 P.2d 436 (1986). The purpose of article 1, section 7, is to protect an individual's right to privacy rather than curb governmental actions. *State v. Lampman,* 45 Wn. App. 228, 232, 724 P.2d 1092 (1986).
>
> A series of appellate cases establish an exception to the warrant requirement for searches of parolees. A probationer has a diminished right to privacy; a warrantless search of a probationer is reasonable if a police officer or a probation officer has a well founded suspicion that a probation violation has occurred. *Lampman,* at 233; *State v. Coahran,* 27 Wn. App. 664, 666, 620 P.2d 116 (1980); *State v. Simms,* 10 Wn. App. 75, 516 P.2d 1088 (1973), *review denied,* 83 Wn.2d 1007 (1974).

Accordingly, Const. art. 1, § 7 requires a well–founded suspicion of a violation, not probable cause, to conduct a warrantless search of a probationer or a convicted defendant

released on conditions of probation supervision pending appeal.

## WELL–FOUNDED SUSPICION OF VIOLATION

Lucas finally argues that the facts do not support a finding that the probation officer had a "well–founded suspicion" that he was involved in criminal activity in violation of his conditions of release.

A warrantless search of a probationer is reasonable if an officer has a "well founded suspicion that a probation violation has occurred." *Patterson,* 51 Wn. App. at 204–05. In *State v. Simms,* 10 Wn. App. 75, 516 P.2d 1088 (1973), *review denied,* 83 Wn.2d 1007 (1974), a warrantless search of a parolee's residence, upon an anonymous tip that controlled substances were in the residence, was held unreasonable. In *Patterson,* a warrantless search of a parolee's vehicle, upon an anonymous tip that led to further evidence, was held to be based on reasonable suspicion. *Patterson* involved the armed robbery of a convenience store. An anonymous caller provided Patterson's name as a suspect. Witnesses tentatively identified Patterson. Also, police had received information from a known source that there might be a gun in Patterson's car. In *Lampman,* the court held that the probationer's conduct following her observation of the probation officer provided the basis for well–founded suspicion justifying a warrantless search. In *Lampman,* the officer had observed the probationer walking along a street and another probationer yelling and waving at her from a car. The car drove off but the officer decided to follow the walking probationer to make sure the two probationers did not associate. The probationer then began running rapidly and looking over her shoulder at the officer. The probationer seemed extremely nervous to the officer.

Here, there is also a well–founded suspicion of criminal activity justifying a warrantless search. Four days prior to the search of Lucas' home, the probation officers had observed suspected drugs in the home. On the day of the

search, when the officers arrived at Lucas' home they told him they were there to conduct a required transfer interview. Lucas became very nervous and demanded a warrant even though the officers had not conveyed a desire to search the home. The officers were relying on their own observations rather than an anonymous tip, their observations were close in time to the search, and Lucas was acting very nervous and looking around the room immediately before the officers entered the home. These facts provide the necessary "well–founded suspicion" that a probation violation has occurred to justify the warrantless search.

Accordingly, we affirm.

COLEMAN, C.J., and FORREST, J., concur.

Review denied at 114 Wn.2d 1009 (1990).