

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE MAR 1 5 2018

Fairhurst, C.J.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 Am on March 15, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| Respondent, | ) No. 93845-8 |
| v. | ) |
| | ) EN BANC |
| CURTIS LAMONT CORNWELL, | ) |
| Petitioner. | ) Filed: MAR 1 5 2018 |

YU, J.—It is well established that an individual on probation has a reduced expectation of privacy, and a community corrections officer (CCO) may conduct a warrantless search if he or she suspects the individual has violated a probation condition. The issue in this case is whether there are any limitations on the scope of the CCO's search. We hold that article I, section 7 of the Washington Constitution requires a nexus between the property searched and the suspected probation violation. There was no nexus in the search at issue here. Accordingly, we reverse the Court of Appeals and Cornwell's convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2013, petitioner Curtis Lamont Cornwell was placed on probation.[1] His judgment and sentence allowed his probation officer to impose conditions of his release, which included the following provision:

> I am aware that I am subject to search and seizure of my person, residence, automobile, or other personal property if there is reasonable cause on the part of the Department of Corrections to believe that I have violated the conditions/requirements or instructions above.

Ex. 4, at 3. Cornwell failed to report to the Department of Corrections (DOC) in violation of his probation, and DOC subsequently issued a warrant for his arrest.

Cornwell first came to the attention of Tacoma Police Department Officer Randy Frisbie and CCO Thomas Grabski because of a distinctive Chevrolet Monte Carlo observed outside a house suspected of being a site for drug sales and prostitution. CCO Grabski later spoke with the registered owner of the vehicle, who said that she had given the car to Cornwell to drive but she wanted it back. Unfamiliar with Cornwell, one of the officers conducted a records check and determined he had an outstanding warrant.

In late November 2014, at approximately 1:00 a.m., Officer Frisbie spotted the Monte Carlo while on patrol with Officer Patrick Patterson, another member of

---

[1] The trial court judge did not make findings of fact or conclusions of law at the CrR 3.6 hearing, and so the following facts are based on testimony presented at the hearing unless otherwise noted.

2

the Tacoma Police Department. Officer Frisbie testified that he intended to stop the vehicle because he believed Cornwell was driving it and he had an outstanding warrant. He did not initiate the stop based on any belief that the car contained drugs or a gun or because he observed a traffic violation.

Before Officer Frisbie could activate his police lights, the car pulled into a driveway and Cornwell began to exit it. Cornwell ignored Officer Frisbie's orders to stay in the vehicle, and Officer Frisbie believed Cornwell was attempting to distance himself from the car. Officer Frisbie then ordered Cornwell to the ground. Cornwell started to lower himself in apparent compliance before jumping up and running. Cornwell was apprehended after both officers deployed their Tasers. He had $1,573 on his person at the time of arrest.

After securing Cornwell, Officer Patterson called CCO Grabski to the scene. CCO Grabski testified that his job is "to help apprehend fugitives of [DOC] as well as to look into violations of people that are on probation." 1 Verbatim Report of Proceedings (VRP) (Dec. 16, 2014) at 82. He testified that he believed Cornwell's warrant was for his failure to report to DOC because "that's pretty much why there's a warrant in the system is they failed to report to [DOC]." *Id.* at 113. Asked if he could think of another reason a warrant would issue, he said, "I can't think of anything that would be different." *Id.*

3

Upon arrival at the arrest scene, CCO Grabski searched the Monte Carlo.

He described the basis for his search as follows:

> When people are in violation of probation, they're subject to search. So he's driving a vehicle, he has a felony warrant for his arrest by [DOC] which is in violation of his probation. He's driving the vehicle, he has the ability to access to enter the vehicle, so I'm searching the car to make sure there's no further violations of his probation.

*Id.* at 93. He explained, "If there is anything in the vehicle, whether it is in a suitcase, clothing, I'm going to go through those items." *Id.* at 94. In this case, CCO Grabski found a black nylon bag sitting on the front seat of the car. The bag contained oxycodone, amphetamine and methamphetamine pills, sim cards, and small spoons. A cell phone was also found in the car.

Cornwell moved pursuant to CrR 3.6 to suppress the evidence obtained during the vehicle search. In denying the motion, the trial court stated that any subjective expectation of privacy Cornwell had "was not . . . objectively reasonable" given that he was on probation and had signed conditions of release that reflected his reduced expectation of privacy. *Id.* at 141.

A jury convicted Cornwell of three counts of unlawful possession of a controlled substance with intent to deliver and one count of resisting arrest. In an unpublished opinion, the Court of Appeals affirmed, holding that there need not be a nexus between the property searched and the alleged probation violation. *State v.*

*Cornwell*, No. 47444-1-II, slip op. at 7 (Wash. Ct. App. Sept. 20, 2016) (unpublished), http://www.courts.wa.gov/opinions/. Alternatively, the court held that if such a nexus were required, it was satisfied in this instance. *Id.* at 8. We granted review only as to the lawfulness of the property search.

## ISSUE

Was the search of the car Cornwell was driving an unlawful search requiring suppression of the evidence obtained?

## ANALYSIS

Issues of statutory interpretation and constitutional law are reviewed de novo. *State v. Evans*, 177 Wn.2d 186, 191, 298 P.3d 724 (2013).

A.    *Preservation of the issue*

We first address the threshold question of issue preservation because the State argues Cornwell failed to preserve his claim that there must be a nexus between the property searched and the alleged probation violation. Ct. Ordered Answer to Pet. for Review at 6-7. At the CrR 3.6 hearing, defense counsel primarily relied on the theory that CCO Grabski knew that the car belonged to a third party and he did not have authority to search property that did not belong to Cornwell.

However, Cornwell did raise the nexus argument. Defense counsel asserted that "the law does require considerably more nexus between the place being

searched, in this case the car, and a probation violation." 1 VRP at 134. He also raised the argument in response to a hypothetical question posed by the judge. The judge asked whether CCO Grabski would have had authority to search the car if Cornwell had stolen it. *Id.* at 127. Defense counsel said no "because there's no reason to believe that there's any nexus between that and any violation of his DOC conditions." *Id.* at 128. In addition, both the State and Cornwell discussed the meaning of RCW 9.94A.631, the legislature's codification of the probation exception to the warrant requirement.

We conclude that the issue was properly preserved. Moreover, an ongoing split in the Court of Appeals, as discussed further below, requires our review in this case. RAP 13.4(b)(2). We therefore address the merits of Cornwell's claim.

B.  *Searches pursuant to article I, section 7*

Article I, section 7 of the Washington Constitution provides a robust privacy right. It states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. The "authority of law" needed is generally a warrant, "subject to 'a few jealously and carefully drawn exceptions.'" *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999) (internal quotation marks omitted) (quoting *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996)).

However, individuals on probation are not entitled to the full protection of article I, section 7. *State v. Olsen*, 189 Wn.2d 118, 124, 399 P.3d 1141 (2017). They have reduced expectations of privacy because they are "'serving their time outside the prison walls.'" *Id.* at 124-25 (quoting *State v. Jardinez*, 184 Wn. App. 518, 523, 388 P.3d 292 (2014)). Accordingly, it is constitutionally permissible for a CCO to search an individual based only on a "well-founded or reasonable suspicion of a probation violation," rather than a warrant supported by probable cause. *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). The legislature has codified this exception to the warrant requirement at RCW 9.94A.631.[2] The statute reads in relevant part, "If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a [CCO] may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property." RCW 9.94A.631(1).

The question presented in this case is whether article I, section 7 requires a nexus between the property searched and the alleged probation violation in order to protect the reduced privacy interest of individuals on probation. While the parties agree that we should determine the scope of a CCO's search consistent with RCW

---

[2] A CCO's authority to conduct a property search is derived from an authorizing probation condition in a valid, court-ordered judgment and sentence. However, the parties agree that the probation condition, and any limitations on the scope of searches conducted pursuant to its authorization, should be interpreted consistently with RCW 9.94A.631.

9.94A.631, their positions on the nexus requirement reflect an ongoing split in the Court of Appeals.

The State asks us to endorse the line of reasoning in *State v. Parris*, where a Division Two panel concluded that "probationers do not have a reasonable expectation of privacy in their residences, vehicles, or personal belongings." 163 Wn. App. 110, 123, 259 P.3d 331 (2011). Because they do not have a reasonable expectation of privacy, the State argues, any probation violation warrants a search of all the individual's property, regardless of whether it is likely to contain any evidence of the alleged violation.

Meanwhile, Cornwell relies on the reasoning of Division Three in *Jardinez*, 184 Wn. App. 518. Concluding that RCW 9.94A.631 is silent on the nexus requirement, the court used the following Sentencing Guidelines Commission commentary on a predecessor statute as evidence of legislative intent:

> "The Commission intends that Community Corrections Officers exercise their arrest powers sparingly, with due consideration for the seriousness of the violation alleged and the impact of confinement on jail population. Violations may be charged by the Community Corrections Officer upon notice of violation and summons, without arrest.
>
> "*The search and seizure authorized by this section should relate to the violation which the Community Corrections Officer believes to have occurred.*"

*Id.* at 529 (quoting DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981, at app. I-13 (1985). The

8

court held the commentary "demands a nexus between the searched property and the alleged crime," which it noted was also "consistent with general principles of search and seizure law." *Id.*

We agree with *Jardinez* that RCW 9.94A.631 is silent on the nexus requirement. We therefore resolve the question presented and the split in the Court of Appeals by interpreting the statute in a manner that conforms to article I, section 7 as permitted by a reasonable reading of the statute's plain language. *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015).

It is already established that in accordance with article I, section 7, individuals on probation do not forfeit all expectations of privacy in exchange for their release into the community. *Olsen*, 189 Wn.2d at 125. While the State may closely supervise them to advance the probation system's goals of promoting rehabilitation and protecting public safety, its authority is limited. *Id.* at 128-29. Individuals' privacy interest can be reduced "only to the extent 'necessitated by the legitimate demands of the operation of the [community supervision] process.'" *Id.* at 125 (quoting *Parris*, 163 Wn. App. at 117).

When there *is* a nexus between the property searched and the suspected probation violation, an individual's reduced privacy interest is safeguarded in two ways. First, a CCO must have "reasonable cause to believe" a probation violation has occurred before conducting a search at the expense of the individual's privacy.

9

RCW 9.94A.631(1). This threshold requirement protects an individual from random, suspicionless searches. Second, the individual's privacy interest is diminished only to the extent necessary for the State to monitor compliance with the particular probation condition that gave rise to the search. The individual's other property, which has no nexus to the suspected violation, remains free from search.

In contrast, allowing searches *without* a nexus between the property searched and the alleged probation violation destroys what remains of the individual's privacy. While a CCO must still have reasonable cause to believe there has been a violation, *no* property is free from search and the CCO does not need to suspect that the search will produce evidence of *any* particular probation violation. Much like a suspicionless search, an open-ended probation search may be used as "'a fishing expedition to discover evidence of other crimes, past or present.'" *Olsen*, 189 Wn.2d at 134 (quoting *State v. Combs*, 102 Wn. App. 949, 953, 10 P.3d 1101 (2000)).

For example, the defendant in *Jardinez* failed to report for a meeting and admitted marijuana use, both violations of his conditions of release. 184 Wn. App. at 521. The CCO used these violations as the basis for a search of Jardinez's iPod, during which he found a photo of Jardinez with a firearm. The photo was admitted as evidence at trial, which resulted in a firearm conviction, even though the CCO

10

"had no reason to believe . . . Jardinez possessed a firearm" before conducting the search. *Id.* at 528. Such sweeping searches conflict with article I, section 7's mandate that an individual's privacy right be reduced only when and to the extent *necessary*. *Olsen*, 189 Wn.2d at 125.

Meanwhile, there is no compelling argument that the "'legitimate demands'" of the probation system require open-ended property searches.[3] *Id.* (internal quotation marks omitted) (quoting *Parris*, 163 Wn. App. at 117). *Parris* well illustrates that requiring a nexus does not impede the State's ability to effectively supervise individuals on probation. Derek Lee Parris was on probation after he failed to register as a sex offender. *Parris*, 163 Wn. App at 113. He violated numerous probation conditions, including contacting minors, failing a urinalysis test, and failing to participate in treatment. *Id.* at 113-14. His mother also informed his CCO that he may have obtained a firearm in violation of his probation. *Id.* at 120.

The CCO searched Parris' room, where she found syringes, pornography, empty alcohol bottles, and three memory cards, one of which was marked with the

---

[3] Citing *Olsen*, the dissent asserts that searches without a nexus are constitutionally permissible because, like random urinalysis (UA) testing of individuals on probation for driving under the influence, they are a valid monitoring tool. Dissent at 7. The comparison is unpersuasive. In *Olsen*, we upheld random UA testing because it was used to evaluate compliance with a *particular* probation condition that prohibited drug and alcohol use. 189 Wn.2d at 133. Here, a search without a nexus to an alleged violation is *not* directly linked to evaluating compliance with a particular probation condition.

name of a female minor. *Id.* at 115. When she viewed their contents, she found sexually explicit videos of Parris and a minor as well as photographs of guns. *Id.* A nexus between the memory cards and a suspected probation violation was undoubtedly satisfied because the CCO "believed she might find evidence of [an illegal firearm]" on the cards. *Id.* at 120. Thus, *Parris* shows that searches tethered to a particular probation condition are a practical and effective tool that further the State's interest in monitoring compliance and promoting public safety while still protecting individuals from arbitrary searches.

In sum, we believe "[t]he goals of the probation process can . . . be accomplished with rules and procedures that provide both the necessary societal protections as well as the necessary constitutional protections." *State v. Lampman*, 45 Wn. App. 228, 233, 724 P.2d 1092 (1986). Limiting the scope of a CCO's search to property reasonably believed to have a nexus with the suspected probation violation protects the privacy and dignity of individuals on probation while still allowing the State ample supervision. We therefore hold that article I, section 7 permits a warrantless search of the property of an individual on probation only where there is a nexus between the property searched and the alleged probation violation.

Applying the nexus requirement to this case, we conclude CCO Grabski's search of Cornwell's car exceeded its lawful scope. While CCO Grabski may have

suspected Cornwell violated other probation conditions, the only probation violation supported by the record is Cornwell's failure to report.[4] This court has already determined that there is no nexus between property and the crime of failure to report. *State v. Patton*, 167 Wn.2d 379, 395, 219 P.3d 651 (2009). Moreover, CCO Grabski's testimony at the CrR 3.6 hearing confirmed that he had no expectation that the search would produce evidence of Cornwell's failure to report, and that he searched the vehicle only because Cornwell "ha[d] a felony warrant for his arrest . . . in violation of his probation [and] [h]e's driving the vehicle." 1 VRP at 93. He explained that his search was not limited in scope because "[i]f there is anything in the vehicle, whether it is in a suitcase, clothing, I'm going to go through those items." *Id.* at 94. He also testified that he was looking for unrelated probation violations because he searched the vehicle "to make sure there's no *further* violations of his probation." *Id.* at 93 (emphasis added). CCO Grabski's search was clearly "'a fishing expedition,'" which article I, section 7 does not permit. *Olsen*, 189 Wn.2d at 134 (quoting *Combs*, 102 Wn. App. at 953).

Because there was no nexus to Cornwell's suspected probation violation, the search of the car Cornwell was driving was unlawful. The evidence seized

---

[4] The dissent claims that there was a sufficient nexus in this case by inferring from the record that Cornwell violated other conditions of his probation. Dissent at 2-3. However, the record indicates that the State failed to elicit testimony that established CCO Grabski had reasonable cause to believe evidence of *any* probation violation would be found inside the car.

therefore should have been suppressed in accordance with our well-established exclusionary rule. *State v. Ibarra-Cisneros*, 172 Wn.2d 880, 885-86, 263 P.3d 591 (2011). We thus reverse the Court of Appeals and Cornwell's convictions.

## CONCLUSION

Individuals on probation have a limited, but constitutionally protected, privacy interest that does not permit CCOs to conduct open-ended property searches. For a search to be lawful, there must be a nexus between the property searched and the alleged probation violation. In this case, the search of Cornwell's vehicle was unlawful because there was no nexus between the search and his suspected probation violation of failure to report to DOC. The evidence seized during the search should have been suppressed. Accordingly, we reverse the Court of Appeals and Cornwell's convictions.

_____
Ju, J

WE CONCUR:

Fairhurst. C.J.
_____

_____

_____

Stephens, J.
_____

Wiggins, J.
_____

González, J.
_____

Geoff McCloud, J.
_____

15

No. 93845-8

MADSEN, J. (dissenting)—The majority holds that a community corrections officer's (CCO) search of the car that probationer Curtis Lamont Cornwell was driving was unlawful because there was no nexus between that search and his suspected probation violation. I disagree. The imposition of a "direct nexus" requirement is contrary to Cornwell's status as a probationer, and it is not a requirement of the controlling statute defining his susceptibility to search, RCW 9.94A.631(1). But, even if an additional, direct nexus must be imposed beyond what is already required by the statute, that requirement is met under the facts of this case. Therefore, I dissent.

Facts leading to the search

The majority identifies the probation violation that prompted Cornwell's apprehension, the arrest warrant, as the only probation violation supported by the record, and thus the only probation violation that is relevant here. But the record also objectively supports an additional basis for the search. Cornwell's arrest warrant, coupled with the pursuing Tacoma police officers' belief that Cornwell was in possession of the Chevrolet Monte Carlo that they had stopped, are the facts that prompted Cornwell's apprehension. But, additional facts developed from that point in time, which raised an objectively

reasonable basis to believe that Cornwell, who was indeed driving the Monte Carlo in question, had also violated the conditions of his probation concerning illegal drugs.[1]

First, Cornwell ignored the police officers' directive to stay in the car when he was stopped. Upon exiting the car, he again ignored the officers' directive to get on the ground. Then, Cornwell fled. When he was apprehended, officers found a large amount of cash (more than $1,500) on his person. These facts added to the other information that CCO Thomas Grabski already had: CCO Grabski had earlier observed the car Cornwell was driving at a known drug house, and the car's owner had informed CCO Grabski that she had given the car to Cornwell but wanted it back. Taken together, there is ample reason to believe that Cornwell was likely in possession of and/or even dealing illegal drugs in violation of his probation. Restated, there is enough objective evidence in the record to establish "reasonable cause" to believe that Cornwell had violated the condition of his probation that prohibited his possession of controlled substances.

At the time of the search, Cornwell was subject to probation conditions, which Cornwell had acknowledged and agreed to abide by, including that he "[shall] [o]bey all laws," he "[shall] [r]eport to and be available for contact with assigned community corrections officer," he "[shall] not consume alcohol," he "[shall] not associate with drug users or sellers," and he "[shall] not use/possess/consume any controlled substances." Ex. 4, at 1-2. Additionally, commensurate with the requirements of RCW 9.94A.631(1),

---

[1] In other words, the circumstance here is similar to a traffic stop morphing into a *Terry* investigation, *see Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), based on developing circumstances that suggest to the officer that illegal activity is afoot and further investigation is warranted.

2

he also expressly acknowledged, "I am aware that I am subject to search and seizure of my person, residence, automobile, or other personal property if there is reasonable cause on the part of the Department of Corrections to believe that I have violated the conditions/requirements or instructions above." *Id.* at 3. Based on this record, I would hold that CCO Grabski's search of Cornwell's car was justified under RCW 9.94A.631(1), with or without the additional nexus requirement imposed by the majority.

### RCW 9.94A.631(1), nexus, and the Washington State Constitution

I also disagree with the majority's view that an additional nexus requirement must be added to the plain language of RCW 9.94A.631(1) in order to ensure that CCOs do not engage in improper fishing expeditions, or that such an addition is required by article I, section 7 of our state constitution.[2] First, as explained above, under the objective facts contained in the record, CCO Grabski's search of Cornwell's car cannot be accurately described as an unwarranted fishing expedition because there was reasonable cause to believe that Cornwell had violated the illegal drug prohibition condition of his probation.

More importantly, this case does not concern the privacy expectations of an unconvicted citizen. Thus, our focus is more properly the parameters of a CCO's authority to supervise a convicted felon as that felon serves a portion of his sentence in the community on probation. Consideration of such parameters includes weighing the CCO's authority to strictly supervise the felon in order to promote the felon's

---

[2] The Washington State Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7.

3

rehabilitation and to monitor compliance with community custody conditions to protect

the public against the felon's acknowledged limited expectations of privacy as a

probationer. In my view, the appropriate balance of these considerations is struck by the

legislature in the plain language of RCW 9.94A.631(1), which provides in relevant part:

> If an offender violates *any* condition or requirement of a sentence, a
> community corrections officer may arrest or cause the arrest of the offender
> without a warrant . . . . If there is *reasonable cause* to believe that an
> offender has violated *a* condition or requirement of the sentence, a
> community corrections officer may require an offender to submit to a
> search and seizure of the offender's person, residence, automobile, or other
> personal property.

(Emphasis added.)

The statute's plain language directs that the availability of a search is triggered

only where "reasonable cause" exists that the probationer has violated "a" condition of

his or her sentence. *Id.* By requiring reasonable cause, the statute does not permit a CCO

to conduct random, harassing, unwarranted searches. Further, by requiring the

reasonable cause to concern only "a" violation, the statute gives the CCO the tools he

needs to closely monitor the probationer to both promote rehabilitation and protect the

public and provides the nexus required: that the search is triggered by a probation

violation.[3] Under this plain reading, a probationer is encouraged to comply with all of

---

[3] As the Ninth Circuit Court of Appeals observed when assessing RCW 9.94A.631(1)'s similarly worded predecessor statute, "offenders enjoy a reduced expectation of privacy while on supervised release, which the law protects by requiring reasonable grounds for a search." *United States v. Conway*, 122 F.3d 841, 842 (9th Cir. 1997) (citation omitted). Accordingly, the statute "promotes the goal of rehabilitation and it enhances community safety by permitting the rapid detection of contraband and criminal activity." *Id.* (citations omitted).

the conditions of his or her probation in order to avoid triggering CCO searches under the statute. This properly balances the various interests involved and avoids the "fishing expeditions" that concern the majority.[4]

As to whether article I, section 7 of our state constitution requires that a stricter nexus component be added to RCW 9.94A.631, as the majority does here, I find our recent decision in *State v. Olsen*, 189 Wn.2d 118, 399 P.3d 1141 (2017), instructive by analogy. There, we held that random urinalysis testing of probationers for controlled substances, as a condition of probation, does not violate article I, section 7 of our state constitution. As this court explained, "probationers do not enjoy constitutional privacy protection to the same degree as other citizens." *Id.* at 124. "Probationers have a reduced expectation of privacy because they are 'persons whom a court has sentenced to confinement but who are serving their time outside the prison walls.'" *Id.* at 124-25 (quoting *State v. Jardinez*, 184 Wn. App. 518, 523, 338 P.3d 292 (2014)). The State "may supervise and scrutinize a probationer more closely than it may other citizens." *Id.* at 125. But "'this diminished expectation of privacy is constitutionally permissible only to the extent necessitated by the legitimate demands of the operation of the parole

---

[4] In *Griffin v. Wisconsin*, 483 U.S. 868, 873-75, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987), the Supreme Court observed that, like incarceration, probation is a form of criminal sanction. Accordingly, probationers do not enjoy the absolute liberty to which unconvicted citizens are entitled, but only conditional liberty properly dependent on observance of special (probation) restrictions, and such restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and the community is not harmed by the probationer being at large. *Id.* Such goals "require and justify the exercise of supervision to assure that the restrictions are in fact observed." *Id.* at 875. The *Griffin* Court further observed that "research suggests that more intensive supervision can reduce recidivism." *Id.* (citing Joan Petersilia, *Probation and Felony Offenders*, 49 FED. PROB. 9 (June 1985)).

5

process.'" *Id.* (internal quotation marks omitted) (quoting *State v. Parris*, 163 Wn. App. 110, 117, 259 P.3d 331 (2011)). As we explained, the government indeed has "a compelling interest in disturbing [a probationer's] privacy interest in order to promote her rehabilitation and protect the public," the random testing was narrowly tailored to monitor compliance with a validly imposed probation condition, and "the judgment and sentence constitutes sufficient 'authority of law' to require random [urinalysis testing]." *Id.* at 126. "[B]ecause probationers have a reduced expectation of privacy, the State does not need a warrant, an applicable warrant exception, or even probable cause to search a probationer." *Id.*

Explaining the particular status of probationers, we observed that the probationer at issue "was convicted of a crime and is still in the State's legal custody. She has a duty to engage in her rehabilitation in exchange for the privilege of being relieved from jail time and '*should expect close scrutiny of her conduct.*' Her privacy interests are more constrained than those of [an unconvicted citizen]." *Id.* at 127 (emphasis added) (citations omitted) (quoting *State v. Lucas*, 56 Wn. App. 236, 241, 783 P.2d 121 (1989)). Probation is "not a right, but 'an act of judicial grace or lenience motivated in part by the hope that the offender will become rehabilitated.'" *Id.* at 128 (quoting *Gillespie v. State*, 17 Wn. App. 363, 366-67, 563 P.2d 1272 (1977)).

Commenting on the need for proper tools in the probation context, we observed that "[t]he State has a duty not just to promote and assess the rehabilitation of a probationer, but also to protect the public." *Id.* at 129. Accordingly, a "sentencing court

has great discretion to impose conditions and restrictions of probation to 'assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large.'" *Id.* at 128 (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 875, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987)).

We recognized that "the State has a compelling interest in closely monitoring probationers in order to promote their rehabilitation," and that because "probation officers' role is 'rehabilitative rather than punitive in nature,' they must, then, have tools at their disposal in order to accurately assess whether rehabilitation is taking place." *Id.* at 128 (quoting *State v. Reichert,* 158 Wn. App. 374, 387, 242 P.3d 44 (2010)). We held that random urinalysis testing was such a tool, reasoning that "[r]andom testing seeks to deter the probationer from consuming drugs or alcohol by putting her on notice that drug use can be discovered at any time. It also promotes rehabilitation and accountability by providing the probation officer with 'a practical mechanism to determine whether rehabilitation is indeed taking place.'" *Id.* at 131 (quoting *Macias v. State,* 649 S.W.2d 150, 152 (Tex. Crim. App. 1983)). We concluded that the random urinalysis testing as a condition of probation was a constitutionally permissible form of close scrutiny of the probationers because it was a narrowly tailored monitoring tool imposed pursuant to a valid prohibition on drug and alcohol use, and was directly related to a probationer's rehabilitation and supervision. *Id.* at 134.

As written, RCW 9.94A.631(1) is likewise a constitutionally permissible tool in the hands of a CCO. It is limited by its terms to reasonable cause. Where reasonable

cause does exist that a probationer has violated a condition of his sentence, a CCO's authority to conduct a search is triggered. Such close supervision promotes a probationer's rehabilitation and accountability and also protects the public. By contrast, the majority's imposition of a direct nexus requirement impermissibly adds language to an unambiguous statute. The added requirement is both unnecessary and harmful because the statute itself contains sufficiently limiting language and the additional nexus requirement dilutes the effectiveness of a CCO's ability to closely monitor probationers, promote rehabilitation, and protect the public. The majority's approach undermines and complicates a straightforward and effective monitoring process and likely will result in increased challenges to the underlying violation supporting a CCO's legitimate compliance searches.

For these reasons, I dissent.

_Madsen, J._

_Owens, J._