MADSEN, J. (dissenting)
¶ 31 The majority holds that a community corrections officer's (CCO) search of the car that probationer Curtis Lamont Cornwell was driving was unlawful because there was no nexus between that search and his suspected probation violation. I disagree. The imposition of a "direct nexus" requirement is contrary to Cornwell's status as a probationer, and it is not a requirement of the controlling statute defining his susceptibility to search, RCW 9.94A.631(1). But, even if an additional, direct *308 nexus must be imposed beyond what is already required by the statute, that requirement is met under the facts of this case. Therefore, I dissent.
Facts leading to the search
¶ 32 The majority identifies the probation violation that prompted Cornwell's apprehension, the arrest warrant, as the only probation violation supported by the record, and thus the only probation violation that is relevant here. But the record also objectively supports an additional basis for the search. Cornwell's arrest warrant, coupled with the pursuing Tacoma police officers' belief that Cornwell was in possession of the Chevrolet Monte Carlo that they had stopped, are the facts that prompted Cornwell's apprehension. But, additional facts developed from that point in time, which raised an objectively reasonable basis to believe that Cornwell, who was indeed driving the Monte Carlo in question, had also violated the conditions of his probation concerning illegal drugs.[1]
¶ 33 First, Cornwell ignored the police officers' directive to stay in the car when he was stopped. Upon exiting the car, he again ignored the officers' directive to get on the ground. Then, Cornwell fled. When he was apprehended, officers found a large amount of cash (more than $1,500) on his person. These facts added to the other information that CCO Thomas Grabski already had: CCO Grabski had earlier observed the car Cornwell was driving at a known drug house, and the car's owner had informed CCO Grabski that she had given the car to Cornwell but wanted it back. Taken together, there is ample reason to believe that Cornwell was likely in possession of and/or even dealing illegal drugs in violation of his probation. Restated, there is enough objective evidence in the record to establish *309 "reasonable cause" to believe that Cornwell had violated the condition of his probation that prohibited his possession of controlled substances.
¶ 34 At the time of the search, Cornwell was subject to probation conditions, which Cornwell had acknowledged and agreed to abide by, including that he "[shall] [o]bey all laws," he "[shall] [r]eport to and be available for contact with assigned community corrections officer," he "[shall] not consume alcohol," he "[shall] not associate with drug users or sellers," and he "[shall] not use/possess/consume any controlled substances." Ex. 4, at 1-2. Additionally, commensurate with the requirements of RCW 9.94A.631(1), he also expressly acknowledged, "I am aware that I am subject to search and seizure of my person, residence, automobile, or other personal property if there is reasonable cause on *1272 the part of the Department of Corrections to believe that I have violated the conditions/requirements or instructions above." Id. at 3. Based on this record, I would hold that CCO Grabski's search of Cornwell's car was justified under RCW 9.94A.631(1), with or without the additional nexus requirement imposed by the majority.
RCW 9.94A.631(1), nexus, and the Washington State Constitution
¶ 35 I also disagree with the majority's view that an additional nexus requirement must be added to the plain language of RCW 9.94A.631(1) in order to ensure that CCOs do not engage in improper fishing expeditions, or that such an addition is required by article I, section 7 of our state constitution.[2] First, as explained above, under the objective facts contained in the record, CCO Grabski's search of Cornwell's car cannot be accurately described as an unwarranted fishing expedition because there was reasonable cause to believe that Cornwell had violated the illegal drug prohibition condition of his probation.
*310 ¶ 36 More importantly, this case does not concern the privacy expectations of an unconvicted citizen. Thus, our focus is more properly the parameters of a CCO's authority to supervise a convicted felon as that felon serves a portion of his sentence in the community on probation. Consideration of such parameters includes weighing the CCO's authority to strictly supervise the felon in order to promote the felon's rehabilitation and to monitor compliance with community custody conditions to protect the public against the felon's acknowledged limited expectations of privacy as a probationer. In my view, the appropriate balance of these considerations is struck by the legislature in the plain language of RCW 9.94A.631(1), which provides in relevant part:
If an offender violates any condition or requirement of a sentence, a community corrections officer may arrest or cause the arrest of the offender without a warrant .... If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.
(Emphasis added.)
¶ 37 The statute's plain language directs that the availability of a search is triggered only where "reasonable cause" exists that the probationer has violated "a" condition of his or her sentence. Id. By requiring reasonable cause, the statute does not permit a CCO to conduct random, harassing, unwarranted searches. Further, by requiring the reasonable cause to concern only "a" violation, the statute gives the CCO the tools he needs to closely monitor the probationer to both promote rehabilitation and protect the public and provides the nexus required: that the search is triggered by a probation violation.[3] Under this plain reading, *311 a probationer is encouraged to comply with all of the conditions of his or her probation in order to avoid triggering CCO searches under the statute. This properly balances the various interests involved and avoids the "fishing expeditions" that concern the majority.[4] *1273 ¶ 38 As to whether article I, section 7 of our state constitution requires that a stricter nexus component be added to RCW 9.94A.631, as the majority does here, I find our recent decision in State v. Olsen , 189 Wash.2d 118, 399 P.3d 1141 (2017), instructive by analogy. There, we held that random urinalysis testing of probationers for controlled substances, as a condition of probation, does not violate article I, section 7 of our state constitution. As this court explained, "probationers do not enjoy constitutional privacy protection to the same degree as other citizens." Id. at 124, 399 P.3d 1141. "Probationers have a reduced expectation of privacy because they are 'persons whom a court has sentenced to confinement but who are serving their time outside the prison walls.' " Id. at 124-25, 399 P.3d 1141 (quoting State v. Jardinez, 184 Wash. App. 518, 523, 338 P.3d 292 (2014) ). The State "may supervise and scrutinize a probationer more closely than it may other citizens." Id. at 125, 399 P.3d 1141. But " 'this diminished expectation of privacy is constitutionally permissible only to the extent necessitated by the legitimate demands of the operation of the parole process.' " Id. (internal quotation marks omitted) (quoting *312 State v. Parris, 163 Wash. App. 110, 117, 259 P.3d 331 (2011) ). As we explained, the government indeed has "a compelling interest in disturbing [a probationer's] privacy interest in order to promote her rehabilitation and protect the public," the random testing was narrowly tailored to monitor compliance with a validly imposed probation condition, and "the judgment and sentence constitutes sufficient 'authority of law' to require random [urinalysis testing]." Id. at 126, 399 P.3d 1141. "[B]ecause probationers have a reduced expectation of privacy, the State does not need a warrant, an applicable warrant exception, or even probable cause to search a probationer." Id.
¶ 39 Explaining the particular status of probationers, we observed that the probationer at issue "was convicted of a crime and is still in the State's legal custody. She has a duty to engage in her rehabilitation in exchange for the privilege of being relieved from jail time and 'should expect close scrutiny of her conduct .' Her privacy interests are more constrained than those of [an unconvicted citizen]." Id. at 127, 399 P.3d 1141 (emphasis added) (citations omitted) (quoting State v. Lucas, 56 Wash. App. 236, 241, 783 P.2d 121 (1989) ). Probation is "not a right, but 'an act of judicial grace or lenience motivated in part by the hope that the offender will become rehabilitated.' " Id. at 128, 399 P.3d 1141 (quoting Gillespie v. State, 17 Wash. App. 363, 366-67, 563 P.2d 1272 (1977) ).
¶ 40 Commenting on the need for proper tools in the probation context, we observed that "[t]he State has a duty not just to promote and assess the rehabilitation of a probationer, but also to protect the public." Id. at 129, 399 P.3d 1141. Accordingly, a "sentencing court has great discretion to impose conditions and restrictions of probation to 'assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large.' " Id. at 128, 399 P.3d 1141 (quoting Griffin v. Wisconsin, 483 U.S. 868, 875, 107 S.Ct. 3164, 97 L.Ed. 2d 709 (1987) ).
¶ 41 We recognized that "the State has a compelling interest in closely monitoring probationers in order to promote their rehabilitation," and that because "probation officers'
*313 role is 'rehabilitative rather than punitive in nature,' they must, then, have tools at their disposal in order to accurately assess whether rehabilitation is taking place." Id. at 128, 399 P.3d 1141 (quoting State v. Reichert, 158 Wash. App. 374, 387, 242 P.3d 44 (2010) ). We held that random urinalysis testing was such a tool, reasoning that "[r]andom testing seeks to deter the probationer from consuming drugs or alcohol by putting her on notice that drug use can be discovered at any time. It also promotes rehabilitation and accountability by providing the probation officer with 'a practical mechanism to determine whether rehabilitation is indeed taking place.' " Id. at 131, 399 P.3d 1141 (quoting Macias v. State, 649 S.W.2d 150, 152 (Tex. Crim. App. 1983) ). We concluded that the random urinalysis testing as a condition of probation was a constitutionally permissible form of close scrutiny of the probationers because it was a narrowly tailored monitoring tool imposed pursuant to a valid prohibition on drug and alcohol use, and was directly related to a *1274 probationer's rehabilitation and supervision. Id. at 134, 399 P.3d 1141.
¶ 42 As written, RCW 9.94A.631(1) is likewise a constitutionally permissible tool in the hands of a CCO. It is limited by its terms to reasonable cause. Where reasonable cause does exist that a probationer has violated a condition of his sentence, a CCO's authority to conduct a search is triggered. Such close supervision promotes a probationer's rehabilitation and accountability and also protects the public. By contrast, the majority's imposition of a direct nexus requirement impermissibly adds language to an unambiguous statute. The added requirement is both unnecessary and harmful because the statute itself contains sufficiently limiting language and the additional nexus requirement dilutes the effectiveness of a CCO's ability to closely monitor probationers, promote rehabilitation, and protect the public. The majority's approach undermines and complicates a straightforward and effective monitoring process *314 and likely will result in increased challenges to the underlying violation supporting a CCO's legitimate compliance searches.
¶ 43 For these reasons, I dissent.

In other words, the circumstance here is similar to a traffic stop morphing into a Terry investigation, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968), based on developing circumstances that suggest to the officer that illegal activity is afoot and further investigation is warranted.

The Washington State Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash. Const. art. I, § 7.

As the Ninth Circuit Court of Appeals observed when assessing RCW 9.94A.631(1)'s similarly worded predecessor statute, "offenders enjoy a reduced expectation of privacy while on supervised release, which the law protects by requiring reasonable grounds for a search." United States v. Conway, 122 F.3d 841, 842 (9th Cir. 1997) (citation omitted). Accordingly, the statute "promotes the goal of rehabilitation and it enhances community safety by permitting the rapid detection of contraband and criminal activity." Id. (citations omitted).

In Griffin v. Wisconsin, 483 U.S. 868, 873-75, 107 S.Ct. 3164, 97 L.Ed. 2d 709 (1987), the Supreme Court observed that, like incarceration, probation is a form of criminal sanction. Accordingly, probationers do not enjoy the absolute liberty to which unconvicted citizens are entitled, but only conditional liberty properly dependent on observance of special (probation) restrictions, and such restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and the community is not harmed by the probationer being at large. Id. Such goals "require and justify the exercise of supervision to assure that the restrictions are in fact observed." Id. at 875, 107 S.Ct. 3164. The Griffin Court further observed that "research suggests that more intensive supervision can reduce recidivism." Id. (citing Joan Petersilia, Probation and Felony Offenders, 49 Fed. Prob. 9 (June 1985) ).