

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36643-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT EUGENE RIDGLEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Scott Ridgley appeals from three drug convictions entered after his community correction officer (CCO) opened Ridgley's safe and found controlled substances. We affirm the convictions, but remand for the trial court to reconsider certain legal financial obligations (LFOs) in light of statutory amendments.

FACTS

A woman arrested on an outstanding warrant advised Centralia Police Detective Adam Haggerty that she and her roommate had purchased drugs from a house on Gish Road and showed the building to the detective. The detective learned that Ridgley lived at the house and was on community custody for a prior drug conviction.

Detective Haggerty alerted CCOs Errol Shirer and Kaylyn Lucas about the information he had received concerning the drug sales. Shirer visited the woman in the

jail and decided to search Ridgley's residence for evidence that he was violating his conditions of release. Shirer then checked Ridgley's file and determined that Ridgley was in violation of his community custody for not being in treatment.

Shirer decided to search Ridgley's residence due to the report from the woman and the community custody violation. He was accompanied at the Gish Road location by Lucas, Haggerty, and another police officer. Shirer directed Ridgley to provide a urine sample. He did so; the sample field-tested positive for methamphetamine. Ridgley admitted that he had recently used the drug. Shirer arrested Ridgley and placed him in handcuffs.

Haggerty and Shirer spoke with Misty Raines, another person present at the Gish Road house. Despite being told by Ridgley not to speak to them, Raines told the detective that there was a meth pipe on a shelf in Ridgley's master bedroom, and also told Shirer that she believed there were cash, guns, and drugs in a safe in that room. Shirer searched the house.

The CCOs found a safe in the master bedroom. After consulting with a supervisor, they took the safe out in the yard and broke it open. Inside were several ounces of apparent methamphetamine, 135 pills in a container, blister packs of pills, and approximately $8,500 in cash. A search warrant was obtained. The contents of the safe constituted the vast majority of the items seized.

Charges of possession of methamphetamine with intent to deliver, possession of Oxycodone with intent to deliver, and possession of Hydromorphone were filed. Ridgley filed a motion to suppress the fruits of the search. After conducting a CrR 3.6 hearing, the trial court denied the motion and entered appropriate findings.

The case proceeded to bench trial. The judge convicted Ridgley as charged and later entered findings required by CrR 6.1(d). The court imposed concurrent sentences of 96 months. Ridgley then timely appealed.

The case was administratively transferred from Division Two to Division Three. A panel of this court considered the appeal without hearing argument.

ANALYSIS

Mr. Ridgley's appeal challenges the legality of the search of the Gish Road residence and some of the LFOs imposed by the trial court. We consider first his search argument before turning to the LFO question. We then briefly discuss one of the issues raised in Mr. Ridgley's statement of additional grounds (SAG).

*Search by CCO*

Mr. Ridgley argues that the CCO lacked a reasonable basis to conduct the search of his residence. His argument fails because the bulk of the trial court's findings are backed by substantial evidence and support the basis for the search.

We review findings entered following a CrR 3.6 hearing for substantial evidence. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). "Evidence is substantial when it

3

is enough 'to persuade a fair-minded person of the truth of the stated premise.'" *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009) (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). The appellate court reviews de novo the conclusions derived from the factual findings. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

Mr. Ridgley assigns error to findings of fact 1.2, 1.3, 1.7, 1.14, and 1.15. His challenge to the first three findings takes issue with the determination that the detective and CCO were told that drugs had been purchased at the Gish Road address instead of having been purchased from someone living at that address. His argument is correct. The arrestee merely indicated that she purchased from someone living there rather than stating that the purchases had taken place there. However, this factual error is of no consequence. The information still tied drug sales to a resident of the Gish Road house, but also was not a basis for the search of that residence.

He challenges findings 1.14 and 1.15 to the extent that they indicate Raines informed the detective and the CCO that there was methamphetamine and cash in the safe in Ridgley's bedroom. In fact, Raines had said that she believed there *might* be drugs and cash in the safe. Ridgley is correct that these findings overstate what Raines actually said.

Nonetheless, the errors Ridgley has identified are insignificant. Washington recognizes that probationers and parolees have a diminished right of privacy that permits

4

a warrantless search based on probable cause. *State v. Lucas*, 56 Wn. App. 236, 239-240,

783 P.2d 121 (1989). Parolees and probationers have diminished privacy rights because

they are persons whom a court has sentenced to confinement but who are serving their

time outside the prison walls. Therefore, the State may supervise and scrutinize a

probationer or parolee closely. *Id.* at 240. Nevertheless, this diminished expectation of

privacy is constitutionally permissible only to the extent necessitated by the legitimate

demands of the operation of the parole process. *State v. Parris*, 163 Wn. App. 110, 118,

259 P.3d 331 (2011); *State v. Simms*, 10 Wn. App. 75, 86, 516 P.2d 1088 (1973).

RCW 9.94A.631 governs supervision of felons under the Sentencing Reform Act

of 1981, ch. 9.94A RCW. It provides:

> If an offender violates any condition or requirement of a sentence, a
> community corrections officer may arrest or cause the arrest of the offender
> without a warrant, pending a determination by the court or by the
> department. If there is reasonable cause to believe that an offender has
> violated a condition or requirement of the sentence, a community
> corrections officer may require an offender to submit to a search and
> seizure of the offender's person, residence, automobile, or other personal
> property.

The statute's "reasonable cause" requirement means that an officer must have a

"well-founded suspicion that a violation has occurred." *State v. Massey*, 81 Wn. App.

198, 200, 913 P.2d 424 (1996). This reasonable suspicion standard requires an officer to

have "specific and articulable facts" on which to act and permits "rational inferences"

from those facts. *Parris*, 163 Wn. App. at 119. "Articulable suspicion" is defined as a

5

substantial possibility that criminal conduct has occurred or is about to occur. *State v.*

*Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). The officer also must establish a nexus

between the property searched and the suspected probation violation. *State v. Cornwell*,

190 Wn.2d 296, 304, 412 P.3d 1265 (2018).

> First, a CCO must have "reasonable cause to believe" a probation violation
> has occurred before conducting a search at the expense of the individual's
> privacy. RCW 9.94A.631(1). This threshold requirement protects an
> individual from random, suspicionless searches. Second, the individual's
> privacy interest is diminished only to the extent necessary for the State to
> monitor compliance with the particular probation condition that gave rise to
> the search. The individual's other property, which has no nexus to the
> suspected violation, remains free from search.

*Id.*

Here, CCO Shirer had received a report that someone at Ridgley's address was

dealing drugs and that Ridgley had not reported for drug treatment. Random urinalysis

testing was a condition of Ridgley's supervision. Under these facts, Shirer had a reason

to ask Ridgley to provide a urine sample for testing. When the test result was positive,

Ridgley admitted to having recently used methamphetamine, a violation of his

community supervision.

On these facts, Shirer had reasonable grounds to search Ridgley's residence to see

if more controlled substances might be found. The tip that the safe might contain drugs

and cash justified the search of that object.[1]  The search was justified by RCW 9.94A.631 and *Cornwell*.

The trial court did not err in denying the CrR 3.6 motion to suppress the fruits of the search.

*LFOs*

Mr. Ridgley next argues that because he was found indigent for purposes of appeal, the trial court erred in imposing LFOs against him.  In light of *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), the State concedes that this matter should be remanded for hearing.  We agree.

*Ramirez* ruled that the 2018 legislative reform of financial obligations imposed in criminal cases applied retroactively to cases on appeal.  *Id*. at 747.  Here, the trial court imposed only fees that were mandatory prior to *Ramirez*.  Now, the filing fee and the DNA collection fee are waivable under certain conditions.  In light of the possible merit of Mr. Ridgley's claims, the State agrees that the trial court should consider the claims due to *Ramirez*.  We, therefore, remand the issue to the superior court for consideration.

*Statement of Additional Grounds*

In his SAG, Mr. Ridgley raises eight claims.  All but one fail because they are either repetitious of arguments made by counsel, are dependent on facts outside the

---

[1] Appellant does not challenge the reasonableness of the forced opening of the safe and we do not express any opinion on that topic.

record, are not properly identified in the record of this case, or are insufficiently briefed. RAP 10.10(c).

The one issue we can address is Mr. Ridgley's challenge to the sufficiency of the evidence to support the two possession with intent to deliver charges. He argues there is insufficient evidence that he intended to deliver the methamphetamine or the Oxycodone. Properly viewed, the evidence supported the bench verdict.

Long settled standards govern our review of this contention. "Following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-106, 330 P.3d 182 (2014) (citing *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)). In reviewing insufficiency claims, the appellant necessarily admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Finally, this court must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Here, Mr. Ridgley possessed several ounces of methamphetamine and 135 Oxycodone pills. Detective Haggerty testified that both of these were large amounts beyond what would be possessed for personal use. The trier-of-fact was permitted to credit this information. *Id*. Accordingly, the evidence allowed the trial judge to find that

No. 36643-0-III
*State v. Ridgley*

the intent to deliver element was proved beyond a reasonable doubt. The evidence, therefore, was sufficient to support the bench verdicts on these counts.

The convictions are affirmed. Remanded for consideration of the LFO challenges.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Pennell, J.

9